ANDREW LINDBLAD

*v.*

BOARD OF EDUCATION OF NORMAL SCHOOL DISTRICT *et al.*

*Opinion filed April 17, 1906.*

1. SCHOOLS—*school board cannot delegate discretionary powers.* The powers of a board of education to employ teachers, fix their salaries and discharge them, to determine in what grades they shall teach and to fix the length and time of the school terms, are discretionary powers, which cannot be delegated nor limited by contract.

2. INJUNCTION—*mere fact that contract is illegal does not justify an injunction.* The mere fact that by a contract the practice school of a normal university and a public school are merged, does not, of itself, entitle a resident patron of the school to an injunction, his remedy in such case, in the absence of special injury, being *mandamus* to compel the school board to provide such teachers as the law contemplates and to exclude persons not legally qualified to teach.

3. SAME—*employment of "critic teachers" in a public school is illegal.* Employment, by a public school board, of critic teachers, whose duty is, not to teach the pupils in the school but to supervise the work of the students of a normal school teaching in the public school for practice, is illegal, and the payment of their salaries is an unlawful diversion of the public school fund, which may be enjoined by one who resides and pays taxes in the school district.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

This is an appeal from a judgment of the Appellate Court for the Third District affirming a decree of the circuit court of McLean county. The following statement of facts is taken from the opinion of the first mentioned tribunal:

"Appellant, a tax-payer and legal voter in the Normal school district of McLean county and a patron of the common schools in said district, filed his bill in equity against the board of education of Normal school district, the board of education of the State of Illinois and certain individuals, appellees, for the purpose of having a certain contract entered into between said board of education of Normal school district and said board of education of the State of Illinois, merging the model school of the Illinois State Normal University into the public school system of the town of Normal, declared illegal and void, and for an injunction restraining the board of education of Normal school district from carrying out the terms and conditions of said contract, and from issuing orders upon the treasurer of said district directing him to pay the salaries of certain critic teachers and of Enoch A. Fritter, superintendent. (Such critic teachers and superintendent were defendants below and are appellees here.) The contract is as follows:

" 'This agreement, made and entered into this eighteenth day of April, 1901, by and between the board of education of the town of Normal, county of McLean, and State of Illinois, and the board of education of the State of Illinois:

" '*Witnesseth:* That the model school of the Illinois State Normal University shall be merged into the public school system of the town of Normal, and that said Normal University shall be permitted to use certain grades or rooms as practice schools under the following conditions:

" '1. Pupils of the first five years of school life shall attend the west side school or the east side system under regulations fixed by the public school board.

" '2. Pupils attending the east sub-district doing the work of the first eight school years shall be distributed among twelve rooms or grades, the pupils to remain on the average of two terms or twenty-four weeks in each grade.

" '3. The twelve grades shall be housed, six (or seven) in the model school, the rest in the public school building.

" '4. The grades in the model school building shall be grades or rooms 1, 2, 3, 4, 11, 12, or such other rooms as may be agreed upon by the superintendent of the public school and the president of the university.

" '5. The high school department of the model school shall be abandoned, but the university shall be permitted to furnish teachers for six high school classes each term, such classes to be selected by the city superintendent and such student teachers to be approved by him. In such classes lesson plans shall be submitted to the high school authorities and shall be under their supervision and direction. Any such teacher may be deprived of his class at any time his work be not satisfactory to the superintendent.

" '6. The university shall furnish janitor, fuel, repairs and ordinary school supplies for the grades housed in the model school building. The public school board shall furnish the same for the grades in the public school building.

" '7. The university may be permitted to use the grades in the model school building, and one or two grades, as needed, in the public school, as a practice school.

" '8. The public school board shall pay the teachers in the practice schools not less than $42.50 per month.

" '9. In each room so used as a practice school the teachers shall be paid by the university such additional sum as may be necessary to secure persons able to supervise and direct the work of student teachers in the most thorough manner. Such additional salary shall not be less than $234 per year.

The university shall not be bound by this section to pay more than $450 per year additional salary to any critic teacher.

" '10. No teacher shall be permitted to teach in the practice school except members of the senior class or persons whose general experience had eminently fitted them for teaching.

" '11. At a date not later than April 1 the university authorities shall notify the public school board what grades the university shall wish to use the following year as practice schools.

" '12. In all grades used as practice schools the teachers shall be selected by the concurrent action of the State board and of the public school board. In all grades not used as practice schools the public school board shall have exclusive right to select the teachers.

" '13. The course of study shall be prepared by the president of the university and the superintendent of schools, and submitted to the public school board for amendment and adoption.

" '14. Rules and regulations relating to rights and obligations of parents' and pupils' reports, discipline, promotions, and all other matters of a general character, shall be made by the public school board.

" '15. The university shall have power to make necessary regulations in regard to the use of the university property and in regard to the mode of instruction and daily program in the practice schools.

" '16. All text books that pupils are required to buy shall be prescribed by the public school authorities.

" '17. If copies of such regularly adopted text books are needed by indigent children they shall be furnished by the public school board.

" '18. The school year in the public school shall be divided into terms in conformity with the three regular terms of the university calendar.

" '19. Tuition in all grades shall be free to all residents of Normal.

" '20. Rates of tuition for non-resident pupils shall be fixed by the public school board, and such tuition shall be paid into the public school treasury.

" '21. All pupils attending the grades in the model school building shall have the privilege of the campus of the university, library and gymnasium, under such regulations as the university may adopt.

" '22. The high school pupils may be permitted to use the campus for a play ground, and shall be granted one hour per day of physical culture in the gymnasium under the supervision of the teacher of physical culture, on such terms as may be agreed upon by the president of the university and the superintendent, providing such privileges shall not conflict with the paramount rights of the Normal students.

" '23. The university instructors in music, drawing and physical culture shall supervise the work in their respective departments in the various grades of the Normal public schools. One-third of their time shall be thus at the disposal of the public school authorities.'

" '24. These articles of agreement may be amended by the concurrent action of the public school board and the State board of education.

" '25. Either party to this agreement may cause the same to terminate on June 30, of any year, by giving written notice to the other party at least six months prior to the proposed termination.'

WESLEY GRINSTEAD, *President,*
ENOCH A. FRITTER, *Clerk,*

For the Board of Education of Normal School District, Normal, Ill.

THE BOARD OF EDUCATION OF THE STATE OF ILLINOIS,
By William H. Green, *President,*
(Seal.)                    ,        Alfred Bayliss, *Secretary.'*

"The bill alleges that the public schools of the town of Normal are conducted under and in pursuance of the terms of said contract, and that the students in attendance upon the Illinois State Normal University, and who teach the grades housed in the model school building and one or more

of the grades housed in the public school buildings of Normal school district, are not required to have certificates from the county superintendent of schools of McLean county; that appellee Enoch A. Fritter is superintendent of the public schools in the Normal school district and receives a salary as such superintendent of $167.64 per month, and that said Fritter also performs educational work for appellee the board of education of the State of Illinois in supervising, directing and controlling the work of the critic teachers employed under the contract, and receives an additional salary therefor from the said board of education of the State of Illinois.

"The chancellor sustained a general demurrer to the bill interposed by appellees and entered a decree dismissing the bill for want of equity. To reverse this decree the appellant prosecutes this appeal.

"The town of Normal was incorporated by special act of the legislature approved February 25, 1867. Article 8 of the charter provides for a public school system; that the town of Normal shall constitute a school district, known as 'Normal School District;' that the governing body of the public schools of such district shall be styled 'Board of Education of Normal School District,' and shall consist of five members, each of whom shall hold office for a term of five years, one to be elected each year on the first Monday in March.

"Section 4 of said article provides: 'Said board of education shall be a body corporate and politic, by the name and style of 'Board of Education of Normal School District;' may have a common seal and change the same at pleasure, and as such may contract and be contracted with, sue and be sued, plead and be impleaded in and before any tribunal having competent jurisdiction.'

"Section 11 provides: 'The said board of education shall have the entire management and control of all the common schools and transact all business which may be necessary in relation to said common schools in said district, and shall

have all the rights, power and authority necessary for the proper management of the schools and school funds, with the power to make all such rules, orders and requirements as they may deem necessary to carry their powers and duties into effect and perfect a good system of public instruction and common schools in said district.'

"Section 13 provides: 'Said board shall have power and authority to divide said school district into two or more districts, when in the opinion of the board it shall seem advisable.'

"The jurisdiction of a court of equity to award the decree sought by the bill in this case is invoked upon three grounds: First, that the contract in question is *ultra vires,* illegal and void, for the reason that the board of education of Normal school district has thereby surrendered or delegated, in whole or in part, certain discretionary powers vested in it as a *quasi* municipal corporation by its charter, to its superintendent, Enoch A. Fritter, and to the board of education of the State of Illinois; second, that certain persons named in the bill as defendants and designated in the contract critic teachers, and to whom is paid $42.50 per month, each, by the board of education of Normal school district, are also in the employment of and receive pay from the board of education of the State of Illinois; that the duties of said critic teachers are to supervise and direct the work of the student teachers who teach in those grades of the common schools denominated in the contract practice schools, and that said critic teachers devote very little, if any, of their time to the work of teaching the pupils attending the public schools; third, that Enoch A. Fritter receives a salary as superintendent of the Normal school district of $167.64 per month, and also performs educational work for the board of education of the State of Illinois in supervising, directing and controlling the work of said critic teachers, and receives therefor a salary from said board of education of the State of Illinois in addition to the salary paid him by the Normal school district."

WIGHT & ALEXANDER, for appellant:

The board of education of the State of Illinois is a private corporation. *Board of Education* v. *Greenebaum,* 39 Ill. 610; *Board of Education* v. *Bakewell,* 122 id. 339; *Boehm* v. *Hertz,* 182 id. 154.

Article 8 of the charter of the town of Normal is the full measure of the powers of the board of education of Normal school district, and any acts or contracts made by such board not authorized by it are void. *Hewitt* v. *School District,* 94 Ill. 528; *Board of Education* v. *Blodgett,* 155 id. 441; 3 Private Laws of 1867, p. 329.

The powers of a municipal corporation are to be strictly construed, and if there is a reasonable doubt of the existence of a particular power the doubt is to be resolved in the negative. *Trust Co.* v. *Railroad Co.* 157 Ill. 641; 20 Am. & Eng. Ency. of Law, (2d ed.) 140, note 7, and cases; *State* v. *Young,* 3 Kan. 445.

A municipality cannot divest itself of its discretionary power, nor surrender it by contract, nor bind itself not to exercise it. 15 Am. & Eng. Ency. of Law, (1st ed.) 1042-1045; *East St. Louis* v. *Wehrung,* 50 Ill. 28; *Bibel* v. *People,* 67 id. 172; *Kinmundy* v. *Mahan,* 72 id. 462; *Dingman* v. *People,* 51 id. 277; *Roberts* v. *Chicago,* 26 id. 249; *Murphy* v. *Chicago,* 29 id. 279; *Quincy* v. *Jones,* 76 id. 231.

The board of education has no power to authorize students of the Normal University to teach in the schools of the Normal school district. Starr & Cur. Stat. chap. 122, par. 185; *Board of Education* v. *Arnold,* 112 Ill. 11.

The patrons of a public school are entitled to the personal services of the teacher employed. Neither the board of education nor the regularly employed teacher has any power or authority to substitute a proxy or proxies for said teacher during the entire school year. *School Directors* v. *Hudson,* 88 Ill. 563.

The board of education of Normal school district has no power to contract in regard to teachers or the management

and policies of the public schools for an unreasonable time beyond the term of the member thereof first to expire. *Davis v. School Directors,* 92 Ill. 293; *Cross v. School Directors,* 24 Ill. App. 191; *Stevenson v. School Directors,* 87 Ill. 255; *Kiehna v. Mansker,* 77 Ill. App. 508.

The public school fund cannot be diverted to the payment of critic teachers, whose duties are, not to teach the children of the public school, but to supervise and train the students of the Normal University in the art of teaching. Injunction will lie to restrain such misappropriation of the public school funds. *Underwood v. Wood,* 15 L. R. A. 825; *Gordon v. Cornes,* 47 N. Y. 608; *Normal School v. Auditors,* 79 Va. 233; *Sherlock v. Winnetka,* 68 Ill. 530; *Otkin v. Lamkin,* 56 Miss. 758; *Curtis v. Whipple,* 24 Wis. 350.

Appellant being a citizen of the town of Normal, a patron of the Normal public schools and a tax-payer in the Normal school district, has full standing in equity to prevent, by injunction, the execution of illegal contracts, and the carrying out of such contracts, or the unauthorized diversion of the public funds of the municipality. *Chicago v. Nichols,* 177 Ill. 97; *Adams v. Brenan,* id. 195; *School Directors v. Wright,* 43 Ill. App. 270; *Board of Education v. Arnold,* 112 Ill. 11; *Chase v. Stephenson,* 71 id. 383; *Ziesing v. Matthiessen,* 79 Ill. App. 560; *Ruble v. School District,* 42 id. 483; *Wright v. Bishop,* 88 Ill. 302; *Kuenster v. Board of Education,* 134 id. 165.

CHARLES L. CAPEN, for appellee the Board of Education of the State of Illinois:

When the duty about to be violated by the corporation or its officers is public in its nature and affects all the inhabitants alike, one not suffering any special injury cannot, in his own name or by uniting with others, maintain a bill for injunction. A private individual cannot maintain a bill to enjoin a breach of public trust without showing that he will be specally injured thereby. Where no injury results to the

individual, the public, only, can complain. *Lumber Co.* v. *Cicero,* 176 Ill. 9; *Seager* v. *Kankakee County,* 102 id. 669; *Chicago* v. *Building Ass.* 102 id. 379; *Kerfoot* v. *People,* 51 Ill. App. 409; *Bancroft* v. *Bancroft,* 61 Atl. Rep. 689; *Hesing* v. *Scott,* 107 Ill. 600.

The special injury is the gist of the action when the suit is brought by an individual. *Barrows* v. *Sycamore,* 150 Ill. 388; *McDonald* v. *English,* 85 id. 232; *Smith* v. *McDowell,* 148 id. 51.

The allegation of special injury must be distinct and clear. *Springer* v. *Walters,* 139 Ill. 419.

WELTY, STERLING & WHITMORE, and THOMAS W. TIPTON, for other appellees:

Courts of equity will not interfere with the exercise of discretionary powers unless in case of manifest abuse thereof to the oppression of the complainant. *Mt. Carmel* v. *Shaw,* 155 Ill. 37; *Brush* v. *Carbondale,* 78 id. 74; *Canal Comrs.* v. *East Peoria,* 179 id. 214.

Courts of equity possess no authority to interfere with the financial affairs of a school district. If the directors have squandered the funds of the school district or appropriated them to purposes not authorized by law there is a remedy at law. *Wahl* v. *School Directors,* 78 Ill. App. 404.

Bills to restrain the doing of that which is merely a public injury and in respect to which the complainant suffers no wrong or injury not common to the community must be brought by the Attorney General or State's attorney, as the representative of the public. *Chicago* v. *Building Ass.* 102 Ill. 379; *Kerfoot* v. *People,* 51 Ill. App. 409.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Pursuant to the contract involved in this case the Illinois State Normal University uses six or seven grades of the public school, which are housed in the model school building, and, if needed, one or two additional grades housed in the

public school building in the town of Normal, as practice schools. In each grade of such schools a teacher, known as a critic teacher, is employed, and, under her direction and supervision, students from the university practice teaching the ordinary branches to the pupils of the common schools. The university also has the right to furnish students to teach, for practice, six classes in the local high school.

The board of education of Normal school district is by the act incorporating the town of Normal, (3 Private Laws of 1867, p. 329,) authorized to manage and control the common schools and transact all business which may be necessary in relation to the common schools, and given all the right, power and authority necessary for the proper management of those schools. Its discretionary powers are broad, but they are powers to conduct and manage common schools only. They include the discretionary power to employ teachers, fix their salaries and discharge them if they fail to perform their duties in a satisfactory manner, the power to determine in what grade each teacher shall find employment, and the power to determine the length of the school terms, when they shall begin and when they shall end. Such discretionary powers the municipality may not delegate to another. 1 Dillon on Mun. Corp. (4th ed.) 154; *City of East St. Louis* v. *Wehrung*, 50 Ill. 28; *City of Chicago* v. *Trotter*, 136 id. 430.

It is apparent from an examination of this contract that by it the board of education of Normal school district has attempted to delegate the discretionary powers specifically mentioned above. By section 5 of the contract the university is permitted to furnish teachers for six high school classes each term, such classes to be selected by the public school superintendent and the student teachers to be approved by him, and to be deprived of their classes at any time their work is not satisfactory to him. It is to be observed that so far as the selection and removal of these student teachers for the high school is concerned, the authority

of the board of education of the Normal school district has been delegated entirely to the superintendent of the public schools and the authorities of the university.

By sections 10 and 12 provision is made for the selection of those who are to teach in the practice schools. Section 10 apparently has reference to the student teachers. No authority is thereby given to the public school board to exercise any power at all in their selection. Section 12 evidently contemplates the employment of the critic teachers in the practice schools, and provides that they shall be selected by the concurrent action of the State board and of the public school board, or, if sections 10 and 12 are to be read together, then both student and critic teachers are to be selected for the practice schools, other than the six high school classes, by the joint action of the State board and the public school board; that is, the latter may select or employ only such teachers as meet the approval of the State board, which, if not a delegation of authority, is at least a limitation which the public school board has no right to place upon its own powers. By section 18 of the contract the power is delegated to the State board to determine the length of the terms in the public school and the times at which they shall begin and end, and by sections 4 and 11 of the contract the power is given to the public school superintendent and the president of the university to decide which grades of the public schools shall be placed in the practice schools, where they will come under the care of the critic and student teachers, and that necessarily gives them the power to determine which grades shall be taught by the regular teachers employed solely by the public school board.

It is evident that the contract is null and void and could not be enforced by either party thereto against the other; but it does not necessarily follow therefrom that appellant is entitled to an injunction against the two public boards to prevent the continuance of the arrangement. As is well said by the Appellate Court, the fact that the contract is illegal and

void will not, alone, confer jurisdiction on a court of equity to enjoin its enforcement, and the conclusion is reached by that court that an injunction should not be awarded to interfere with the continuance of the present arrangement, for the reason that appellant does not show that the present manner of conducting the schools, or the methods used in instructing and disciplining the children, have caused, or will cause, any injury or oppression to him.

So far as the mere matter of the manner in which the schools are conducted is concerned, if the bill only showed that the schools were being jointly managed by the two boards, and that the public school board had in part delegated its authority to the State board and that the practice schools were being conducted within the public school, we would agree that the right of appellant which had been violated was a naked legal right, which equity would not enforce. Under those circumstances his remedy undoubtedly would be at law, where *mandamus* could compel the public school board to provide such teachers for appellant's children as the law intends, and to exclude persons who were appearing in the public schools and seeking to teach there without being legally qualified or authorized so to do. But there is another phase of the bill. Appellant seeks an injunction against the public school board to prevent the payment of the salaries of the critic teachers. It is apparent from the bill that these critic teachers are employed, not to instruct the pupils in the public schools in the common school branches, but to perfect the students of the university in the art of teaching, while the latter are endeavoring to teach the pupils of the common schools for the experience thereby afforded. The attempt is to merge two schools into one. The students of the university, without compensation, practice teaching in the grades of the public school which are being used by the university as practice schools, and the critic teachers supervise and instruct, not the pupils of the common schools, but the students of the university. The public

221—18

school board is without authority to employ teachers to perform the duties of the critic teachers.

It follows, therefore, that the contract by which the public school board employed each of the critic teachers for the purposes aforesaid is illegal and void, and that the payment of those teachers out of the funds of the public school is an unlawful diversion of the public money. Such an unlawful contract is an injury to the tax-payer, and he may have an injunction to prevent the appropriation of the school fund to this purpose, which is not warranted by the law. *Adams* v. *Brenan,* 177 Ill. 194; *City of Chicago* v. *Nichols,* 177 id. 97.

The appellant shows himself entitled to no relief as to the salary of the public school superintendent. For aught that appears, he was employed by the common school authorities for a purpose for which they might lawfully employ him.

There is equity in the bill in so far as it seeks to enjoin the public school board from paying the salaries of the critic teachers.

We have been favored with a most plausible and ingenious argument by counsel for the State board, picturing the unfortunate results to educational institutions in this State if the contract involved be not upheld. That reasoning might well be addressed to the law-making power. Pedagogy has no lawful or proper place in the curriculum of the common schools. As well might law or medicine be found there.

The judgment of the Appellate Court and the decree of the circuit court will be reversed, and the cause will be remanded to the circuit court for further proceedings consistent with the views expressed in this opinion.

*Reversed and remanded.*