## Chicago Title & Trust Company v. Jerome J. Danforth et al.

### Gen. No. 13,468.

: 1. FORMER DECISION—*limitation of rule as to, being law of a case.* The rule that a previous decision of the Appellate Court on legal propositions is the law of that case if it again reaches that court, cannot be extended to a case in which a different complainant is asserting for parties whom he makes defendants substantially the same rights that those parties were in a former case asserting against other parties made their co-defendants in the later one.

2. DAVIS V. CONSTRUCTION CO., 126 ILL. APP. 121—*distinguished.* In the present case however, conclusions of the Appellate Court are not contrary to the propositions laid down by the Branch Appellate Court in Davis v. Abstract Construction Company, 121 Ill. App. 121. Those propositions are only that no person has a legal right to compel the recorder of Cook county to permit him to make substantial copies of entire books in the recorder's custody nor to expose books to his examination which show only judicial proceedings and tax-sales. They do not include the doctrine that a taxpayer has the right to prevent the recorder by injunction from allowing these copies to be taken or information obtained, or that such information is property of this county which a taxpayer can interfere to protect.

3. COUNTY—*what not property of, which recorder may be enjoined, from giving away.* Abstract books and records of judicial sales, etc., are not property of the county which a taxpayer may by injunction restrain the recorder, having their custody, from permitting being copied for use in the business of abstract making, even though by permitting such copying the recorder is creating competition in a line of business performed by himself, from which the county may derive a profit.

4. EQUITY—*jurisdiction of, with respect to public officers.* Courts of equity will not take jurisdiction, at the instance of a mere taxpayer, to govern the administration of public officers and offices in their routine detail.

Bill for injunction. Appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in this court at the March term, 1907. Affirmed. Opinion filed December 2, 1907.

**Statement by the Court.** This is an appeal from a decree entered by a chancellor of the Circuit Court of Cook county sustaining demurrers to an amended bill

of complaint filed in said court by the appellant and dismissing the bill for want of equity at complainant's costs.

The original bill in the cause was filed May 1, 1906, by the Chicago Title and Trust Company, complainant, against Jerome J. Danforth, the Abstract Construction Company and the Real Estate Title and Trust Company (corporations), the County of Cook and Abel Davis, Recorder of the County of Cook.

To this bill the County of Cook and Abel Davis, recorder, filed answers (hereinafter described), and the other defendants demurred. The demurrers were sustained and leave was given to the complainant to amend its bill. An amended bill was thereupon filed by it against the same defendants December 19, 1906. The material allegations of this amended bill are these:

The complainant, the Chicago Title and Trust Company, is a corporation organized under the laws of Illinois, and a large taxpayer in the County of Cook, and as such taxpayer "is interested in the disposition of the public funds of said county and of its properties, including the abstract books thereafter mentioned, in the possession of the recorder of said county," and "it brings the bill in its capacity as a taxpayer and for the purpose of preventing the illegal use and diversion of public property."

In 1871 all the records in the recorder's office and in the courts of Cook county were destroyed by fire. Shortly afterwards Wilmanns & Thielcke, abstract makers, began the compilation of a set of tract indices, which comprised a synopsis of the history or chain of title of the different lots of land contained therein from the time of the destruction of the records, and continued said compilation until 1875, the purpose being to so state the history of such titles that by means thereof an examiner of titles could inform himself of all the instruments relating to the title of any particular piece of property by the file numbers of the various docu-

ments constituting said chain of title, by the names of the several grantors and grantees in said deeds, by the date of the instruments, the dates of filing the same for record, and by the description of the property therein referred to, so that he might be directed to the several places, books and pages where the instruments in said chains of title were transcribed at large.

In 1875 the County Board of Cook county purchased from Wilmanns & Thielcke these books and a large quantity of compiled material for $50,000, and placed them in the hands of the recorder with directions to post up said books as instruments were filed in his office for record, which the recorder did.

On July 1, 1874, a statute of Illinois went into effect entitled, "An act to revise the law in relation to recorders."

Certain books and indices (mentioned in the bill) were required by section 12 of that act, and it was provided that every instrument filed in the recorder's office should be transcribed at length. By section 12 also it was provided that when required by the county board, the recorder of each county should also keep an "abstract book," which should show by tracts every conveyance or encumbrance recorded, the date of the instrument, the time of filing the same, and the book or page where the same was recorded, which book should be so kept as to show a true chain of title, etc., to each tract of land. The statute further provided that when abstract books had not been kept in any county, the county board might procure them made. In pursuance of said act the County Board of Cook county purchased the books and materials mentioned.

At the time of said purchase and until the year 1887, said abstract books and compiled material were not by law open generally to public inspection or access, but only to those individuals who had some special occasion for the information they contained.

In 1887 two acts were passed by the legislature re-

lating to the duties of recorders and the making of abstract books and abstracts of title. One, approved May 31, 1887, and taking effect July 1, 1887, amended the act of 1874 by adding section 21, reading as follows:

"All records, indices, abstract and other books kept in the office of any recorder, and all instruments filed for record therein, shall, during the office hours, be open for public inspection and examination; and all persons shall have free access for inspection and examination to such records, indices, books and instruments, which the recorders shall be bound to exhibit to those who wish to inspect or examine the same; and all persons shall have the right to take memoranda and abstracts thereof without fee or reward."

The second act was approved June 16, 1887, and also took effect July 1, 1887. It provided that when a recorder had been required by the county board to keep abstract books, he should also keep judgment dockets and indexes thereto, showing all judicial proceedings affecting title to real estate in said county, tax sale books with indexes thereto, showing tax sales or forfeitures, and such other books as are usual or necessary to be kept for the purpose of making complete abstracts of title to real estate; also that every recorder keeping such books should make and certify under the seal of his office, for all persons desiring the same, abstracts of title to all real estate in his county, and charge therefor certain specified fees. The act also provided for an indemnity bond to be given by the recorder to insure the accuracy of the abstracts and provided for the recorder an additional salary of $1,000 in counties of the third class.

(The foregoing are the allegations of the bill concerning the act of June 16, 1887. As it is a public act, of which the courts take notice, it may be here also noted that the first section of this act requiring the recorder to keep the specified books and documents contains the following proviso:

"*Provided,* that nothing in this act shall be construed to empower the recorder to prevent the public from examining and taking memoranda from all records and instruments filed for record, indexes and other books in his official custody; but it shall be his duty at all times, when his office is or is required by law to be open to allow all persons without fee or reward to examine and take memoranda from the same.")

In 1903 an act was passed repealing but also re-enacting the act of June 16, 1887, with a change in the amount and nature of the recorder's bond required, and a provision for the accumulation of an indemnity fund from the fees of the office paid to the county board.

Because of various deficiencies in the character of the books provided for in the act of 1874, they were not adapted for and could not be used for and were not intended for, the making of abstracts of title. They were expressly limited by law to such instruments as should be filed in the recorder's office. The books required to be kept by recorders for the business of making abstracts when required by the county board were authorized, on the other hand, to contain notations of every transaction, etc., relating to such lands, whether recorded in the recorder's office or not.

It was intended by the legislature by the act of June 16, 1887, and of 1903, to create in every recorder's office where the county board should so direct a business of abstract making for compensation, and to create by taxation a capital and equipment therefor which should provide the public with an independent means of procuring abstracts of title not in private hands, and also secure a pecuniary return to the public.

Ever since said law of 1887 the recorder has continued to keep up books with the full material to show the actual state of the titles, so that the said books in the recorder's office contain not only those matters which are required to be contained in abstract books by the act of 1874, but all the additional information regarding the title, such as judgments and decrees of

the courts, claims for liens, administrators' sales, etc., are obtained by the recorder from the records of the courts, etc.

Said recorder has continued to keep up a large number of dockets and books compiled from the records of other offices under the authority of the act of June 16, 1887.

Since the adoption of that act the recorder of Cook county has been engaged in making abstracts of title for customers whenever desired, and the other provisions of the statute have been observed.

The books purchased from Willmanns & Thielcke were thirty-four tract indices or abstract books, with other books, etc. At the present time the abstract books or tract indices aggregate nearly six hundred of approximately five hundred pages each. The recorder has also many other books, indices and compiled information made up and kept by him and used in making abstracts of title.

The making of these books, etc., requires a very high degree of intelligence and technical experience, and by reason thereof is very expensive. The said books and other material, as described in the recorder's office, are worth a great amount of money, and have cost the County of Cook about $500,000, exclusive of a contract with one Marriott for re-writing such books, which contract was entered into between the County of Cook and Marriott on August 26, 1904, and is being carried out. The county agrees to pay Marriott $124,400 and Marriott agrees to re-write, re-transcribe and re-layout the said books into various named indices. In addition to said contract price, the county has incurred a further expense for superintendence of said work, amounting to at least $15,000, besides other large expenses in connection therewith.

The county required Marriott, by said contract, to stipulate and agree that no copy of the work contemplated under the said contract, or any part thereof,

should be made or taken by Marriott, and Marriott was required, in connection therewith, to enter into a bond to save Cook county harmless from loss or damage by reason of any copy having been made.

In February, 1904, the Abstract Construction Company was incorporated, with a capital stock of $200,000, and has been engaged in copying said abstract books and indices for more than a year, and recently has sold and conveyed to the Real Estate Title & Trust Company, which was incorporated with a capital stock of $1,000,000, those materials which the said abstract company had obtained by copying, together with such other materials as it was able to acquire by compilation from original sources, for a large amount, which complainant is informed and believes to be $1,000,000 in the paid up stock of the latter company.

Throughout Cook county, in practically all transfers of lands, the information used is in the form of abstracts of title made by professional abstracters from the recorded instruments in the recorder's office. There is no other practical method of exhibiting the title to lands in Cook county. In making such an abstract of title from the records, it is absolutely essential that the abstracter shall first obtain the chain of title, meaning thereby the list of instruments and proceedings which comprise the history of said title, together with references to the books and pages of the records in which the same may be found transcribed. For that reason "abstract books" or "tract indices" correctly compiled and showing such a chain of title, with reference to the recorded transcripts of the instruments in such claim, are indispensable for the business of an abstract maker, and for the business of the County of Cook and its recorder in the business of making abstracts of title, and a complete series of such abstract books, comprising such a chain of title, with proper references to the complete instruments therein relating to the lands in Cook county, constitutes the

principal capital of every professional abstracter doing business in said county, as well as of the recorder of Cook county in his business of abstract making.

The essential feature of any such abstract book is the series of document numbers under any given description of property. From these any intelligent abstracter can provide himself with the residue of the information and compile a history of the title to any particular piece of land from the books in which the instruments or proceedings transferring such title are recorded at large. The list of document numbers therefore comprises essentially all that is the vital requirement for the making of abstracts of title, and any given person having either a copy of the abstract books complete or the document numbers therein is fully equipped to make abstracts of title in competition with the County of Cook and its recorder, and is in as favorable a position for the making of abstracts therefrom by the use of the county's resources as if he were in personal possession of said county's abstract books themselves.

The copying of the lists of document numbers from said abstract books or tract indices amounts to the same thing in fact as if the residue of said matter in said books had also been copied. All the other particulars noted on the recorder's abstract books are simply an aid for convenient reference to the instruments designated by said document numbers.

If in any copy of the lists of the document numbers relating to a given description of property any thereof were omitted, such memoranda would not be available to defendants in the business of making abstracts of title, nor would the taking away of such memoranda be any injury to the recorder in his said business, but if all the document numbers alone were taken, omitting the descriptions of property to which they relate, the reverse would be true.

It is practicable to make up from the records of

instruments and court and other records a complete set of such abstract books or tract indices in the same manner and by the same methods that the said recorder's abstract books have been made up, and every existing set of such abstract books or tract indices, whether in public or private hands (excepting those of the defendants hereinafter named), have been so made up; but the cost of making copies of the said abstract books so as to obtain all the vital parts of said abstract books which the county possesses in its recorder's office complete would not exceed one-fifth of what it has cost the County of Cook to purchase and compile the said abstract books, and would not exceed one-fifth of what it would cost to compile from the records in the recorder's office and other original sources such a set of abstract books; nor would the time necessary for such a work be more than one-fifth the time necessary to compile such books from the original sources in the recorder's office and elsewhere. Moreover, the quality of labor employed in copying either substantially or verbatim the tract books of Cook county is of a less intelligent, less experienced and less expensive nature.

Jerome J. Danforth, one of the defendants, with his associates, has caused to be organized the defendant The Abstract Construction Company and the defendant The Real Estate Title and Trust Company. The Abstract Construction Company and Danforth its president, have by numerous employes, for the purposes of their business, been engaged since 1904 in copying from the abstract books and tract indices in the recorder's office of Cook county all the said vital parts of said abstract books, namely, the descriptions and complete lists of document numbers, and in great part have been copying verbatim the other particulars compiled in said abstract books, so as to reproduce the whole of said abstract books necessary for the making of abstracts of title, and also have been copying verbatim

Chicago Title & Trust Co. v. Danforth.

or substantially the contents of many of the books of material compiled by the recorder of Cook county from the records of other offices in said county for his business of abstract making. This they have been doing for their private use, for the purpose of entering upon the business of making abstracts of title to lands in Cook county for customers in competition with the abstract business of the recorder. The material already so copied and obtained by defendants Danforth and said Abstract Construction Company and by the defendant The Real Estate Title and Trust Company, since a conveyance to the last named corporation hereafter described, comprises the whole vital or essential part of said abstract books relating to a large number of pieces of property, and the defendants are constantly acquiring in like manner copies of the contents of said abstract books as to other pieces of property. Such copies are not either "memoranda" or "abstracts" of said abstract books, but complete transcripts of the whole thereof as to each such parcel of land so selected for copying excepting only in some cases those additional details which are mere conveniences and not essential parts of said abstract books.

The said Abstract Construction Company and its president, Danforth, have caused to be conveyed this large amount of information and copies thus obtained to the defendant the Real Estate Title and Trust Company for a price largely beyond the cost of acquiring and making them, and have covenanted also so to convey all such other materials as should be acquired from the same sources and elsewhere after that date, and the said Real Estate Title and Trust Company, by the use of the same materials which were purchased and compiled by Cook county and copied by said Danforth and said Abstract Construction Company is now holding itself forth to the general public as fully equipped to make abstracts of title to lands in Cook county in competition with said Cook county and its recorder.

The Real Estate Title and Trust Company and Danforth, who is its president, also, are moreover engaged in the business of making such abstracts in competition with Cook county and said recorder, directly from said abstract books and tract indices in his office, not by taking therefrom memoranda or abstracts thereof, but by copying from said books from day to day, as they have occasion therefor in the course of their business, the entire chain of title to all such parcels of land as they desire and all the compiled materials relating thereto from which the recorder himself makes up his abstracts of title for customers and are thus carrying on a large part of their private business in the making of abstracts for customers, so that the County of Cook is furnishing by taxation defendants' capital and equipment for its competitive business. The said defendants are also using, as rapidly as the same are completed and delivered to Cook county, the new transcripts and copies now being made by Marriott at the expense of Cook county. The Real Estate Title and Trust Company is now engaged in the business of abstract making, and has made and sold, and is engaged in making and selling and putting into the hands of the public abstracts of title drawn from said materials and made up by the use of said compilations purchased and paid for by Cook county.

April 18, 1905, Abel Davis, then the recorder of Cook county, claiming that the Abstract Construction Company was unlawfully making copies of the abstract books of the recorder for the purpose of engaging in the business of making abstracts of title, refused to permit said Abstract Construction Company further to proceed with the copying of said abstract books, whereupon the said Abstract Construction Company filed its bill of complaint in the Superior Court of Cook county, for an injunction against the recorder and certain commissioners of Cook county, restraining them from interfering with the said Abstract Construction Com-

pany in its access to the books in the recorder's office, and taking such extracts, information and data therefrom as should be requisite and necessary to it in its business of furnishing abstracts of title.

An interlocutory injunction to this effect was ordered by the Superior Court. From the order allowing it Abel Davis and the County of Cook took an appeal to the Appellate Court of the First District, and on June 2, 1905, the said order of injunction was reversed by the Appellate Court, "and it was by said Appellate Court in said cause adjudged that said abstract books of said recorder were set apart by law for the business of abstract making for the advantage and profit of said County of Cook, but in the nature of a private business, and that the defendants had no lawful right to copy or otherwise procure and take away the same."

No other proceedings have been taken in said cause since said time, but the same still remains pending in the Superior Court.

Since the entry of the order of reversal in the Appellate Court the Abstract Construction Company sold to the Real Estate Title and Trust Company all its material gathered as aforesaid for the alleged consideration of one million dollars.

Jerome J. Danforth is president and active manager of both companies, and the Real Estate Title and Trust Company took the said material with full knowledge that it was unlawfully copied and was the property of the County of Cook, and could not be lawfully used except by and under the direction of said county or of said recorder.

The said order of the Appellate Court was an adjudication as against said Abstract Construction Company, and said Danforth, its president, and all other persons interested therein; that the said copying of said compiled work of the recorder was unlawful, and a misappropriation of the public property belonging to said

county and subject to be restrained at the suit of any proper person.

The defendants have no right to copy or acquire by any means whatever those compilations, tract indices and other material which have been set apart by law, or made, purchased, or secured by said county by taxation for the purpose of the abstract business.

In the business of making and furnishing abstracts of title as the same is uniformly conducted in Cook county, all the information contained in an abstract is furnished in writing and delivered to customers and passed from hand to hand in transactions in real estate, and frequently copies thereof are made and transferred from hand to hand, so that in many cases numerous copies of the same abstract of title containing the same information are scattered among a large number of property holders, whereby the information and compiled materials of Cook county are made public and widely circulated so that the same can never be recalled or revoked.

Danforth, the Abstract Construction Company and the Real Estate Title and Trust Company have wrongfully obtained and are wrongfully using the copies and materials described belonging to the County of Cook, and are wrongfully using the recorder's abstract books themselves. Neither said county nor said recorder, nor any other person in possession and control of such books or materials has any authority to permit the said defendants to obtain such copies either verbatim or substantially, so as to use them as described, or to permit them to conduct their business of abstract making by the use of the recorder's books themselves. The Real Estate Title and Trust Company has no right to use the materials thus obtained from the recorder's compiled work, or to make abstracts of title by the use thereof, but the possession of such compiled material by the defendants as aforesaid, is of itself unlawful, and a perversion and misuse of public property, to the

injury of the complainant and the other taxpayers and citizens of Cook county.

Unless prevented by injunction, the defendants will continue to make and vend abstracts of title made up from the sources belonging to Cook county and wrongfully taken therefrom, and will deprive the said county and its people of great gains, which they would otherwise make in said abstract business, and distribute among the general public the vital parts of the material belonging to Cook county, so that the same cannot be recalled or restored, and "so that the County of Cook and its recorder will be unable to control the distribution or circulation of said materials, or abstract of title made therefrom, all of which would be in defiance of the property rights of said Cook county and of said recorder and of the taxpayers and citizens of Cook county, including complainant, as well as greatly to their financial injury and loss."

Therefore complainant, the Chicago Title and Trust Company, on its own behalf as a taxpayer of Cook county, brings its bill to restrain and terminate the wrongs aforesaid committed and intended to be committed by the defendants and each of them and by the recorder of Cook county and by the County of Cook, and to cause to be restored to the possession of the recorder of the County of Cook all such materials as have been as aforesaid unlawfully taken away or withdrawn from it, and also to restrain and enjoin the use of any such materials for the purpose of abstract making or distribution.

The prayer of the bill is for an injunction against the defendants Danforth and the two companies "copying either verbatim or substantially any of the abstract books or tract indices belonging to the County of Cook in the possession of the recorder, and transcribing or otherwise taking from any of such books lists of documents, numbers of instruments or other particulars exhibiting the chain of title of lots or parcels of land

so as to reproduce the same either verbatim or substantially in other abstract books or tract indices, and making up or compiling any abstract book or tract index from any abstract book or tract index belonging to Cook county and making indices or abstracts by the use of the recorder's abstract books or any books which may have been copied or compiled from them and selling or in any way transferring the said books or materials compiled or copied from said Cook county abstract books, or compiled materials; also for an injunction against Cook county and the recorder of said county permitting the other defendants to make any such copies either verbatim or substantially as have been described, or to make abstracts of title from the use of the recorder's compiled material;" and "further, that said defendants, or such of them as have possession of any books or compiled materials, which have been made up or obtained wholly or in part from said abstract books or tract indices, or other compiled materials in the recorder's office of said Cook county, may be required to restore the same to the county of Cook, and to said recorder's office, and put the same into the sole and absolute control of said recorder and said county, free from any custody, charge or control thereof by the defendants, or any of them; and further, that said defendants Danforth, Abstract Construction Company and Real Estate Title and Trust Company, and each of them, may be compelled to account to said Cook county and to said recorder for any and all income or compensation which they may have derived from the making of any abstracts of title by means of the information, compilations and materials obtained by them or any of them from said abstract books or tract indices in said recorder's office; and that the complainant may be allowed to make parties all such persons as have or may have in their possession any abstracts of title made up by said last named defendants, or any of them, from said abstract

or tract books in said recorder's office or from abstract or tract books copied or made up from the recorder's books as aforesaid, as and when the names of such persons may become known to complainant, and that all such persons may be likewise enjoined and restrained from making any use of any such abstract of title, and may be required to surrender the same to said recorder of Cook county, and that the complainant may have such further and other relief as to equity may appertain.''

A rule was obtained on the defendants to plead, answer or demur to said amended bill, the order requiring a demurrer by December 27, 1906, but giving until January 3, 1907, for a plea or answer.

Thereupon, on December 26th, Danforth, the Abstract Construction Company and the Real Estate Title and Trust Company filed to the amended bill a joint and several demurrer, which was both general and special. The special causes of demurrer alleged were: The pendency of a prior suit, to which the recorder and the county were parties, involving the matters in dispute. That the complainant, as an alleged taxpayer, should not, pending such suit, be allowed to litigate on behalf of said county the same issues. Mutifariousness of the bill through misjoinder of persons and causes of action. Prolixity, irrelevancy and unintelligibility in the bill by the introduction of propositions of law and constructions of statutes; and the want of standing or right on the part of the complainant to maintain said bill of complaint.

There was no pleading to the amended bill by the recorder or the county but there was a speedy hearing upon the demurrers of Danforth and the Abstract Companies, which were sustained by the chancellor. The order sustaining the demurrers also dismissed the amended bill of complaint as against all the defendants for want of equity, reciting that the recorder and the county had not joined in said demurrers, but

had filed answers to the original bill, and no pleadings to the amended bill, and that it appeared to the court that the relief sought against the recorder and the County of Cook was so interwoven with the relief sought by the bill against the demurring defendants that no relief could be granted against the former in view of the ruling on the demurrers.

A stipulation was also made by the complainant's counsel waiving any right to contend on an appeal that the bill should not have been dismissed as against the recorder and the County of Cook in view of the ruling of the court on the demurrer.

The answer of the recorder to the original bill admitted many of the allegations of the bill which were practically repeated in the amended bill, and it joined in the prayer of the bill, but insisted that the general extent of the right of abstracters in general in the office of the recorder, with reference to the prosecution of their business as abstracters, was not necessarily involved in the proceeding, and should not be determined therein.

The answer of the county, after alleging that the complainant, the Chicago Title & Trust Company, and the defendant the Real Estate Title and Trust Company, were each engaged in making abstracts of title for hire and reward and were in active competition with the county in its business of making abstracts of title, declared that they had no right to make substantial copies of any of the records in the office of the recorder or of the original instruments filed therein for record. It then denied that the complainant was entitled to any part of the relief prayed by it.

From the decree sustaining the demurrers to and dismissing the amended bill, the Chicago Title and Trust Company appealed to this court and has assigned the action of the court in so sustaining the demurrers and dismissing the bill as error.

WILSON, MOORE & McILVAINE, for appellant.

Darrow, Masters & Wilson and Kraus, Alschuler, & Holden, for appellees.

Mr. Justice Brown delivered the opinion of the court.

While we must not be considered as indorsing the position taken by the appellant, that we are bound in this cause by the decision and opinion of the Branch Appellate Court of this District in Davis v. Abstract Construction Company, 121 Ill. App. 121, it is not, in the view we take of the present suit, necessary, that we should depart in any respect from the propositions of law or the construction of the statutes laid down in that case.  This, however, is not the same case, nor a case even between the same parties.  The decisions cited to us—Ward v. Johnson, 5 Ill. App. 30; Wilson v. Carlinville, 87 Ill. App. 364; Garrett v. Pierce, 84 Ill. 31; Fry v. Radzinski, 121 Ill. App. 303; Pease v. Ditto, 189 Ill. 456; Theological Seminary v. People, 189 Ill. 439; Heffron v. Knickerbocker, 51 Ill. App. 291—are simply authority for the position that in the same case a decision of this court becomes a part of the law of the case.  This is undoubtedly true, but it cannot be extended by implication to a situation like the present on the theory that a different complainant is merely asserting for parties whom he makes defendants substantially the same rights that those parties in the former case asserted against their co-defendants in this one.  Even were they doing so—and it will be seen that we cannot admit that they are,— we should be at liberty, since the cause is a different one, to declare and enforce our own views on the questions involved.

But it is undoubtedly true, on the other hand, that it is of importance that when it can reasonably be avoided the opinions of this court in different cases should not be inconsistent with each other nor with those of our colleagues in the Branch Appellate Court of this District.

In the present case, as we have said, there is no necessity of reviewing the conclusions reached in the decision of Davis v. Abstract Construction Company, *supra*, and for the purposes of this adjudication we shall assume them to be settled—it being understood that this in no way will prevent us hereafter, if the decision of another case requires it, from examining for ourselves the questions determined by the Branch Appellate Court in the Davis case.

It is necessary for our discussion in the outset to state definitely what we understand the case of Davis v. Abstract Construction Company to have decided. It is only this:

First, that a person or corporation has no legal and enforcible right, either by virtue of the common law or of the statutes of this state, to compel the recorder of Cook county to permit such person or corporation to make copies verbatim or substantially of entire books in the recorder's possession and control; and second, that such a person or corporation has no right to compel the recorder even to expose to the examination of such person or corporation, because he or it is desirous of taking memoranda and abstracts thereof, books which the recorder may have in his possession showing judicial proceedings or tax sales affecting real estate.

The first conclusion is based upon prior decisions in this state declaring that the common law gave to the public no general right of access to the books held by, or instruments filed with, the recorder (Scribner v. Chase, 27 Ill. App. 36) and upon the opinion of the court that the words "memoranda and abstracts" in section 21 of the "Act to revise the law in relation to Recorders, as amended May 31, 1887," do not mean substantial copies of the entire books, but something less. "It is a general rule in the construction of statutes," says the court, "that they are not to be construed as changing the common law further than by

their terms they expressly declare." Therefore the court held that the common law rule affecting the right of control of the recorder over his books was not so far abrogated by the statute as to any of them as to justify the interference of a court to compel him to allow entire copies of them to be made.

There is certainly nothing in this, as seems to be claimed by appellant, which implies that the interference of a court can be properly asked to prevent the recorder, if he be so inclined, from allowing such copies to be made. On the contrary, Mechem on Public Offices, sec. 739, quoted by the Branch Appellate Court, expressly speaks of the question at common law being whether the recorder will be compelled to allow the access and use claimed. Mr. Justice McAllister in Scribner v. Chase, 27 Ill. App. 36, in declaring his view of the common law, says that it does not deny to the recorder "power, control and discretion" as to the use of the books, and Bean v. People, 7 Colorado, 200, which he cites as supporting his decision, expressly declares the law to be that there was at common law no rule to prevent the public officer from aiding abstracters of title, nor any because of which the court should compel him to do so against his will.

The second conclusion is based upon the view that while the common law was changed to some extent by section 21 as to books of the recorder described in sections 12 and 19 of the act in relation to recorders, it was not changed as to any other books, either by said section 21, or by the proviso in the first section of the Act of June 16, 1887, authorizing recorders to keep judgment dockets and tax sale books and go into the business of making abstracts. This view in turn is based on the opinion of the court that section 21 was enacted before the Act of June 16, 1887, and could not refer to the books for the first time in the later act authorized to be kept, and that the proviso in the said subsequent act was, in effect, but a re-enactment of the said section 21. It is said that the judgment dock-

ets and tax sale books are not within the purview of the proviso, which forbids the recorder from preventing the public "from examining and taking memoranda from all records and instruments filed for record, indexes and other books in his official custody," because these "new books" are not within the recorder's "official custody" as a public officer, but in his custody "in his private capacity as a competitor with private persons in the business of abstract making for compensation."

In this conclusion again there is certainly nothing asserting the complainant's view in this case, that the information in the books alluded to, or the matter of the compilations into which that information is thrown, is the property of the county, which a taxpayer has the right to prevent, by legal proceedings, the recorder from allowing to be given away. We are of the opinion that the discretion of the recorder was the very thing which the Branch Appellate Court meant by its opinion should be protected.

This bill attacks the right of the recorder to exercise it, and is brought, as it declares, to terminate the wrongs which are intended to be committed by the recorder in exercising it.

But although the case of Davis v. Abstract Construction Company furnishes no basis for the vital contentions of the complainant in this bill, we must examine those contentions independently to see whether they are based on sound legal positions. Disregarding the proposition then, that this cause is controlled by the decision in the Davis case, we find that the claim set up in the complainant's amended bill reduces itself to this:

First, not only is the recorder not obliged to allow the defendant Abstract Companies to make the copies and compilations from his books which the bill alleges they have made and are making, but he is obliged by the law to prevent their making them: (a)   because

such making amounts to and is an actual unlawful taking of the property of the county, for which it has paid out of money raised by taxation; and (b) because it is an unlawful use of the property of the county to enable the said defendants to go into competition with the recorder in a business for which the tax payers have furnished the means.

Second, since the recorder has not in the past enforced, and is not in the present enforcing, the law and doing his duty in preventing the making of these copies and compilations, any taxpayer can, by bill, compel him to do so, and can, moreover, recover for the county the property which has been eloigned by compelling restitution to the recorder of the copies and compilations made.

We do not agree with these contentions. We are so clearly of the opinion that the second proposition is incorrect and that a taxpayer has no standing to file a bill to enforce the law and to drive the recorder to the proper discharge of his duties, and that the courts cannot undertake, in cases like this, by chancery decrees to govern the administration of public officers and offices, that it is perhaps superfluous for us to advert to what we deem fallacies in the precedent proposition, which lays down the duty of the recorder in this regard. We will do so, however, briefly. In the first place, the information which is taken away from the recorder's books either by copying them in full or copying them in part, can in no sense be denominated property. It is indexed, re-arranged or compiled information from public documents. Even if the recorder may, if he choose, from motives of policy or in furtherance of the public good, keep that information in that form to himself, or even if it be his duty to do so, it by no means follows that a person who has obtained it heretofore, or may through the dereliction of the recorder obtain it hereafter in increased measure, has unlawfully taken any property of the

county. The books and their contents are the real property of the county. They are left intact so far as the bill shows. Especially does this seem clear when the admissions of the bill are noted, that the information obtained from these compiled books, which it is said should not be allowed to be copied, is all at hand in documents which are confessedly open to all the public, but that to gather it from them would require the expenditure of more time, labor and money. The proposition that this copying is a conversion of actual property of the county cannot be maintained. One might as well say that a person copying from some published book in a library, which he had no legal right to enter, and taking his notes away, had converted the property of the library.

Nor can we even assume that the recorder is doing wrong and violating his duty in allowing the use of these lists and compiled books, if he does so allow it, by competitors in business. The authorities from which we have quoted—Scribner v. Chase and Bean v. The People—declare it to be in the discretion of the recorder whether or not he will allow rival abstracters to obtain the information they desire in the way they desire it. Why should it not be so here? It is beside the question to appeal to what complainant seems to think the evident intent of the legislature to give the recorder a virtual monopoly of abstract making to the pecuniary advantage of the county and its taxpayers. The legislature may, in the acts which are referred to in this bill, have had such an intention, and it may not. Its purpose may have been to enable landowners, a class frequently favored by legislation, to procure abstracts of title cheaper by setting up the recorder as one competitor to abstracters already in business, who could not consolidate or pool with them. It may have also been in its mind that such statutes as it passed would be likely to raise up, by providing a set of abstract books accessible to all, still other

Chicago Title & Trust Co. v. Danforth.

competing abstracters and still further reducing prices. It is no violent presumption that the advantage of a class rather than the pecuniary profit of the entire mass of taxpayers, may have been the object of the legislature's solicitude. Nor is it inconceivable, even if improbable, that the multiplication of abstracters under certain conditions might make the recorder's business as an abstracter better rather than worse. Conditions may be imagined where such a very partial monopoly as the recorder could have, would not be so advantageous for his business as a practically unlimited competition in which his advantages as an abstracter would be more discussed and recognized. Of this he, in his quasi-private capacity as an abstracter (which the bill insists on), should be the judge. Nor is it even certain that his business as an abstracter would be more lucrative, the larger it was, or that the taxpaying community therefore would be losers by its decrease. After all, abstract making is a business like every other, and all business is attended with risk.

But be all this as it may, whether, as we think is the case, it is, on the assumption that the doctrine of Davis v. Abstract Company is correct, properly and legally within the recorder's discretion and control, whether or not he will allow the defendant companies to do the acts complainant considers grievances, or, as complainant urges, it is illegal and unlawful for the recorder to allow or the defendant companies to do them, we are entirely clear that the complainant has no standing and a court of chancery no power in this case to interfere. There may be remedies other than a change in the officer for the unlawful action of the recorder if he be acting unlawfully in this regard, but this proceeding in chancery is not one of them. It is an attempt to control the management of a public administrative office by requiring the interference of the courts in the detail and routine of its duties.

A simple illustration will clearly show this. It must be admitted that the common law, in conjunction with the statutes of Illinois, makes it the right of the owner of a given parcel of land to consult and to copy entire, if he wishes to do so, the memoranda concerning that parcel of land in certain books of the recorder. The ownership of the land would give him the "special personal interest" which would render his right indisputable. On the other hand, it is the theory of the complainant, and asserted to be the doctrine of Davis v. The Abstract Construction Company, *supra*, that the owner of that one piece of property has no legal right to make substantial copies from those same books of lists and memoranda affecting all other lands in the county, for the purpose of fitting himself to do business as an abstracter. But between these two supposed claims are many possible intermediate ones. This lot owner might claim the right to obtain for his neighbor owning an adjoining lot equally full information concerning that lot from the same sources. He might claim this right alleging that he was furnishing the information out of generosity and neighborliness, or admitting that he was retained by that neighbor for the purpose and receiving compensation. The same situation might be presented as to a block, a subdivision or a quarter section.

Is it the recorder who in such case has to determine and rule on what his duty requires him to allow, and what to prohibit, and when the line is passed which shows that the copier or compiler ceases to have a "special personal interest" and is engaged in an unlawful abstraction of information to use in a competitive business; or is it the duty of a court of chancery as each claim is made, if a taxpayer calls on it for the decision, to regulate the matter by allowing or refusing an injunction? The question would seem to answer itself.

The theory on which that part of the relief prayed

Chicago Title & Trust Co. v. Danforth.

in the bill, which does not thus consist of controlling the discretion of the recorder, is based, is that there has been a wrongful conversion of some of the county's property, which is now in the hands of the defendant companies, and which should be returned with an accounting for the profits of using it. We have already indicated that we could not consider the information, the lists, or copies, or compilations in the hands of the company the property of the county, however wrongful or unauthorized their taking may have been. With the fall of the doctrine which holds them such property, the theory of relief alluded to must also fall.

But even if we should grant to the uttermost the premises of the complainant in this regard, and assume the information to be the property of the county, improperly converted, we should fail to see that a taxpayer simply as such had any standing to maintain a bill like the present one.

Many cases have been cited by complainant as establishing this standing. It would be undesirable for us to attempt to analyze and distinguish them separately. Examination and consideration of them all has failed to convince us that the Supreme Court of this State has ever gone so far as to attribute to a single taxpayer, bringing a bill in his own right, a standing thus to protect himself as one of the public against such an indefinite, indistinct, unseverable, incomputable damage as this assumed diversion and misuse of public property of this particular kind would work to him.

The cases which hold that an illegal tax may be restrained, or the illegal contracting of a debt to be thereafter paid by taxation prevented at the prayer of a taxpayer in chancery, and even those cases which imply that injury to a taxpayer, is conclusively presumed by the unlawful expenditure of public money, or the unlawful incurring of obligations, do not reach the point here involved, as it seems to us. It is more akin to the question (decided against the right to sus-

tain the bill on that ground) raised in Lindblad v. Board of Education, 221 Ill. 261, namely, whether a taxpayer could restrain the Board of Education of the town of Normal from violating a right the complainant had that the public schools should be used simply for public school purposes, and not for those of the University of Illinois. The reasoning of the court in such cases as Robey v. City of Chicago, 215 Ill. 604, in Springer v. Walters, 139 Ill. 419, and in Seager v. Kankakee County, 102 Ill. 669, seems to us more applicable to this case in its general aspect than that in the cases which the complainant has cited to sustain its right to bring this bill and secure the relief prayed therein. Especially does the supposed right of the complainant as a taxpayer to interfere seem dimmed when it is noted that the very basis of its bill is that the business of the recorder as an abstracter, and the possession of the compilations copied are of a quasi-private character, and not of a fully public one.

We think the Circuit Court was right in sustaining the demurrer and dismissing the bill, and we affirm its decree.

*Affirmed.*