BOARD OF EDUCATION, SOUTH STICKNEY SCHOOL DISTRICT 111, Plaintiff-Appellee, *v.* KARLENE JOHNSON *et al.,* Defendants-Appellants.

(No. 59191;

First District (5th Division)—April 11, 1974.

*Modified upon denial of rehearing May 17, 1974.*

Kleiman, Cornfield and Feldman, of Chicago (Gilbert Feldman, of counsel), for appellants.

Scariano and Gubbins, of Chicago (Bruce C. Mackey, of counsel), for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Defendants appeal from the entry of a summary judgment in plaintiff's favor and from the denial of their motion for summary judgment.

This action involves a collective bargaining agreement (agreement) entered into between the Board of Education (plaintiff) and the teachers' union (union), wherein plaintiff recognized the union as the sole and exclusive bargaining agent for teaching employees. Article III of the agreement provides a definition and criteria for grievance procedures,[1] which, in the event of continued impasse, culminate with the submission of disputes to final and binding arbitration.[2]

---

[1] "SECTION 1. *Definition:* A grievance shall mean a specific grievance in writing.
    (a) That there has been a violation, misinterpretation, or misapplication of any provision of this agreement and/or policy of this School District; or
    (b) That a teacher has been treated unfairly or inequitably by reason of any act or condition which is contrary to established policy or practice governing or affecting teachers."

[2] "SECTION 5. *Fourth Stage.* If the grievance is not resolved satisfactorily to the union within five (5) days of the hearing before the Board (Third Stage), there shall be available a fourth step of impartial arbitration. The union may submit, in writing, a request to enter into such arbitration. The arbitration proceeding shall be conducted by an arbitrator to be selected by the two parties within seven (7) days after said notice is given. If the parties fail to reach agreement on an arbitrator, the selection of the arbitrator will be made in accordance with the rules of the American Arbitration Association."

In its complaint, plaintiff sought, in part, a stay of arbitration from the grievance filed by Karlene Johnson (Johnson), a member of the bargaining unit. Johnson, in her answer, stated that plaintiff, in violation of the agreement, transferred her to another school and refused to assign her to an open class at her school. Plaintiff assigned two reasons for the requested stay: (1) should the dispute go to arbitration, plaintiff could not be bound by the decision of the arbitrator; and (2) the matter in dispute was one vested within the discretion of plaintiff and could not be submitted to binding arbitration. Plaintiff, therefore, prayed that the court under section 57.1 of the Civil Practice Act [3] declare the arbitration provision contained in the agreement null and void, or that the arbitration provision was null and void to the extent that it required arbitration of transfers and assignments of members of the bargaining unit.

In Count II of the complaint, plaintiff sought the same relief noted above but with respect to a different grievance. Defendants Laura Creighton and Shirley Hackel (Creighton-Hackel), members of the bargaining unit, filed a grievance in which they complained that they were required to do the clerical work of writing student names on monthly attendance cards. This grievance, unlike the one above, had been submitted to arbitration with an award in favor of Creighton-Hackel. Plaintiff contends that: (1) the grievance was not one which should have been arbitrated; and (2) the decision of the arbitrator was not binding, inasmuch as the grievance was a matter within plaintiff's discretion and not delegable to an arbitrator.

Both parties filed motions for summary judgment. The principal facts set forth in the memorandums in support of the motions were as follows: Plaintiff operates the public schools in Stickney Township in grades K through 8, and the union is the bargaining representative for the teachers employed by the plaintiff. The Johnson grievance concerned a purported violation by the plaintiff of Article IV of the agreement, dealing with transfers of teachers from one school to another.[4] According to a memo

[3] Ill. Rev. Stat. 1971, ch. 110, par. 57.
[4] "ARTICLE IV
   SECTION 2. It is agreed that:
      (b) When involuntary transfer or reassignment is necessary, volunteers from those teachers affected will be transferred or reassigned first. A teacher's qualification, length of service in School District 111 and personal preference shall be major criteria in determining such transfers or reassignments;
      (c) The administration, in interpreting teacher qualifications, shall use the following guidelines:
         1. Certification;
         2. Area of specialization (including degrees, research, publications, etc.);

signed by the chairman of the grievance committee, and included as part of the record, Johnson, who was certified to teach grades K through 8, applied for a fifth-grade position in her school after her first-grade class was closed. Plaintiff instead transferred a fourth grade teacher to the fifth grade position and assigned Johnson to teach first grade in another school in the district. Johnson contended that a first-year teacher then teaching second grade should have been assigned to the other school and Johnson, having seniority, should have been retained to teach second grade in her school. After exhausting the grievance procedures outlined in the agreement, the union sought to have the dispute arbitrated. Thereafter, plaintiff filed its complaint seeking to have the arbitration stayed and the arbitration provision itself declared null and void in its entirety or to the extent that it required arbitration for the transference and assignment of teachers.

The Creighton-Hackel grievance concerned a purported violation by plaintiff of article IX of the agreement [5] in that teachers were required to write in the names of their students on monthly attendance cards. This grievance reached arbitration and after a discussion of the arbitrability issue, the arbitrator rendered an award favorable to the grievant. It was from this award that plaintiff filed Count II of their complaint, seeking to set it aside, asserting that it could not be bound by an arbitration award, and that plaintiff cannot submit to arbitration matters of discretion vested in it as specifically granted by the legislature *vis-a-vis* the Illinois School Code.[6]

---

3. Pertinent experience (educational and vocational); and
4. Teacher's ability as reflected by the whole of the teacher's written evaluation in the District.

* * *

*SECTION 9.* Transfers made because of decreased pupil enrollment in the building shall be based on seniority. If it is necessary to move the teacher out of the school, the teacher with the least building seniority within the classification being reduced shall be the first transferred, and so on * * *."

[5] *SECTION 4.* No teacher shall be assigned duties that are principally clerical in nature, such as * * * the compilation of monthly and yearly attendance records, provided that reasonable notice of clerical assistance requirements is given by the teacher to the Building Principal or his designee.

[6] Ill. Rev. Stat. 1971, ch. 122, par. 24—18:

"Teacher shall keep daily registers showing the name, age and attendance of each pupil, the day of the week, month and year. Registers shall be in the form prescribed by the Superintendent of Public Instruction.

Such registers shall be furnished by the school directors, and each teacher shall, at the end of his term of school, return his register to the clerk or secretary of the school board. No teacher shall be paid any part of the school funds unless he has accurately kept and returned such a register."

The trial court, after considering the motions for summary judgment and their supportive documents, found in favor of plaintiff, holding:

"That the Karlene Johnson grievance and demand for arbitration constitutes an attempt to invade the discretion vested in the Board of Education and, as such, is not arbitrable. (*Board of Education v. Rockford Education Association*, 3 Ill.App.3d 1090).

That the Creighton-Hackel grievances and arbitration, including the 'Award of Arbitration' constitutes an attempt to contravene the express mandatory requirements of the Illinois School Code. (Ill. Rev. Stats., ch. 122, par. 24—18 and par. 18—12) (Teachers *shall* keep, etc.) (School Boards *shall* require, etc.) and, as such are not arbitrable grievances."

On appeal, the following issues were raised: (1) does Illinois statutory or case law specifically exempt from collective bargaining or binding arbitration the subject matter of the grievances in the instant case; and (2) is the decision of the Illinois Appellate Court, Second District, in *Board of Education v. Rockford Education Association, Inc.* 3 Ill.App. 3d 1090, 280 N.E.2d 286, reconcilable with the decision of this court in *Chicago Division of the Illinois Education Association v. Board of Education*, 76 Ill.App.2d 456, 222 N.E.2d 243.

OPINION

## I.

Presented here is the issue of whether the specific grievances heretofore enumerated can be the subject matter of binding arbitration. The significant question involved, however, is whether submission of disputes to binding arbitration pursuant to a collective bargaining agreement constitutes an illegal delegation of the duties reposed in plaintiff by the Illinois School Code (Ill. Rev. Stat. 1971, ch. 122, par. 10—1 *et seq.*).

■■ In the resolution of the problem presented here, we have examined the cases and authorities governing the various aspects of public sector collective bargaining. *Chicago Division of the Illinois Education Association v. Board of Education*, 76 Ill.App.2d 456, 222 N.E.2d 243, is significant. In *Chicago Division* the question of permissive collective bargaining for school boards and teachers' unions was reached for the first time. In the absence of any legislative expression on the matter [7] and in the light of their apparent belief that the agreement was a practical

---

[7] *See* Derber, *Labor-Management Policy For Public Employees in Illinois: The Experience of the Governor's Commission*, 1966-67, 21 Ind. and Lab. Rel. Rev. 541 (1968); Clark, *Public Employee Labor Legislation: A Study of the Unsuccessful Attempt to Enact a Public Employee Bargaining Statute in Illinois*, 20 Lab. L.J. 164 (1969).

expedient to the handling of public employment labor relations, the board and the union sought judicial approval of the agreement. The court necessarily confined itself to the factual issue presented to it and held that *if* a board *chose* [8] to enter into a collective bargaining agreement the court would, in the absence of any legislative directives to the contrary, sanction such an agreement as a natural extension of the board's powers.[9] An intervenor in that case argued that in the absence of a statute, collective bargaining was an impermissible delegation of the board's duties. The court, however, was not persuaded by this argument, although unbridled collective bargaining was not, in our understanding of the case, intended. In affirming the lower court's decree, the court attempted to limit by judicial action the effect of the collective bargaining agreement by holding that "* * * if negotiations should fail to resolve differences, the decision of the Board of Education should be final"; a position we believe to be irreconcilable with collective bargaining agreements. (*See Miller, The Alice-in-Wonderland World of Public Employee Bargaining,* 50 Chic. B. Rec. 223 (1969).) We agree with the position taken by Miller on page 225 in regard to the impact of the *Chicago Division* holding:

> "The Appellate Court thus affirmed the lower court's decree which sanctions bargaining but appears to leave the decision on all negotiated matters up to the school board—a condition which any experienced negotiator in the private sector quickly recognizes as being totally inconsistent with both the concept and the practice of collective bargaining."

Nevertheless, we support the action taken by the court in attempting to formulate policy consistent with labor practices prevalent in both the public and private sector; that the court limited the scope of the holding can only be attributed to the implicit limitations placed upon any court in passing upon specific facts presented to it.

Defendants argue that *Chicago Division* and the recent case of *Board of Education v. Rockford Education Association, Inc.,* 3 Ill.App.3d 1090, 280 N.E.2d 286, are irreconcilable. In *Rockford,* Getts, a member of the collective bargaining unit, applied for an administrative position created by the board. After the board rejected his and all other applica-

---

[8] *See Chicago High School Assistant Principals Association v. Board of Education of Chicago,* 5 Ill.App.3d 672, 284 N.E.2d 14.

[9] "Only one significant decision rendered by an Illinois court of appeals, has held that a public employer has the authority, in a non-proprietary area and absent a statute, to engage in private-sector-type collective bargaining * * *." Edwards, *The Emerging Duty to Bargain in the Public Sector,* 71 Mich. L.Rev. 885, 890 (1973).

tions and left the position unfilled, Getts filed a grievance pursuant to the collective bargaining agreement. Getts exhausted all of the procedural steps provided for in the agreement and as a terminal step demanded the grievance be submitted to binding arbitration. The board maintained that selection or employment of employees was not intended to fall within the ambit of the collective bargaining agreement and, in any event, the matter was something that could not be delegated by the board to a third-party arbitrator. The court, in sustaining the board's position, recognized that *Chicago Division* sanctioned school board/union collective bargaining agreements. However, the court went on to hold that such agreements were restricted by the dictates of the Illinois School Code (Ill. Rev. Stat. 1971, ch. 122, par. 10 *et seq.*), which provides that certain matters are to be decided by the board alone. The finding of the court in this regard [10] is entirely consistent with *Chicago Division,* in which the court, as a policy matter and as it construed the School Code, decided that boards were not precluded from entering into collective bargaining agreements. *Rockford* simply stated that certain decisional matters, although contained in the terms of a collective bargaining agreement, could not be delegated.[11]

The argument has been raised that once a board has entered into an agreement that is a partial delegation of its responsibility and, therefore, a further delegation of the resolution of minor disputes under the agreement to an arbitrator is merely a necessary step to implement the agreement.[12] In most of the cases which develop this argument, public em-

---

[10] 3 Ill.App.3d 1093:
"It has been held that a board of education does not require legislative authority to enter into a collective bargaining agreement and that such an agreement is not against public policy [Citation.] However, a board may not, through a collective bargaining agreement or otherwise, delegate to another party those matters of discretion that are vested in the board by statute."

[11] The arbitration dealt with in both *Rockford* and in the instant case is referred to as "grievance" arbitration as opposed to "interest" arbitration. Grievance arbitration involves interpretation or application of laws, agreements or customary practices of the agreement; whereas, disputes as to 'interests' involve the question of what shall be the basic terms and conditions of employment. (*See* Note, *Legality and Propriety of Agreements to Arbitrate Major and Minor Disputes in Public Employment,* 54 Cor. L.R. 129 (1968); *Killingsworth, Grievance Adjudication in Public Employment,* 13 Arb. J. 3 (1958).) In the agreement here, the jurisdiction of the arbitrator is limited to grievance arbitration, and in this opinion we are addressing ourselves only to grievance arbitration.

[12] *See* Wellington and Winter, *Structuring Collective Bargaining in Public Employment,* 79 Yale L.J. 805, 834 (1970); Note, *Collective Bargaining for Public Employees and the Prevention of Strikes in the Public Sector,* 68 Mich. L.R. 260, 280 (1969).

ployment legislation has been enacted calling for collective bargaining between public employers and employees. While Illinois has no such statute, *Chicago Division* stands as authority in this state for collective bargaining. Corollary thereto is the question of whether binding arbitration of grievances, limited of course by the mandates of the School Code, is a natural concommitant to the agreement itself and therefore enforceable. In order to resolve this question, we will review some of the cases in other jurisdictions dealing with this issue.

In *Local 1226, AFSCME v. City of Rhinelander*, 35 Wis.2d 209, 151 N.W.2d 30 (1967), where a grievance arbitration was involved, the applicable state statute specifically provided that collective bargaining agreements between municipal employers and labor organizations "shall be binding" if they contain express language to that effect. The court in upholding the validity of binding arbitration found: "it is illogical to hold in this case that the arbitration provisions are valid but that the court is powerless to enforce them * * * especially in the light of the legislative enactment * * * that 'such agreements shall be binding'." "The legislature has passed statutes doubtless of statewide concern which provide that the city's agreement to arbitrate grievances is binding on the city."

In *City of Auburn v. Nash*, 312 N.Y.S.2d 700, 34 App.Div.2d 345 (1970), involving an appeal from an order granting a stay of arbitration of a grievance filed by an employee, the court upheld the enforceability of arbitration for minor disputes. There a statute provided for collective bargaining between public employers and employees and a recent amendment thereto established a panel of qualified persons to serve as arbitrators. In addition, a governor's report encouraged the use of terminal arbitration. The court held, on page 705, "that the State itself is not insulated against the operation of an arbitration clause in a contract because the power to contract implies the power to assent to the settlement of disputes by means of arbitration."

In *Tremblay v. Berlin Police Union*, 108 N.H. 416, 237 A.2d 668 (1968), where a statute provided for collective bargaining, the grievance procedure clause of a collective bargaining contract was attacked as an unlawful delegation of municipal authority. The court, in sustaining the validity of the arbitration provision, held it was "subordinated to New Hampshire law" (which, among other things, included a statute that provides a party may give notice that it will not be bound by an arbitrator's decision).

In *Oakland County Sheriff's Department v. Local 23, AFSCME* (Mich. S.L.M.B., Jan. 8, 1968), where a public employment statute was in effect, it was determined that if a public employer has the duty to bargain and

sign a contract with a union, it logically follows that he should have the power to allow an arbitrator to interpret an existing contract. *See* Note, *Arbitration and Agency Shops as Mandatory Subjects of Bargaining,* 14 Wayne L.R. 1238 (1968).

In *Central School District No. 1 v. Litz,* 304 N.Y.S.2d 372, 60 Misc.2d 1009 (1969), where there was a statute authorizing arbitration, the court determined, on page 376, "[T]he statute authorizes arbitration, the contract delimits the arbitrator's powers to rule in accordance with law and the court retains power to confirm or reject the decision. \* \* \* Under the circumstances, there is no illegal delegation of power."

In *Local 1518, AFSCME v. St. Clair County Board of Commissioners,* 43 Misc.App. 342, 204 N.W.2d 369 (1972), involving a grievance procedure and where an arbitration statute was in force, the court determined, on page 345, "It would be most incongruous if the Legislature, in providing for compulsory arbitration of such matters, traditionally the subject of mutual agreement, did not at least permit compulsory arbitration of the comparatively minor disputes bound to arise from time to time in the administration of the contract."

In *Local 953, AFSCME v. School District,* 66 LRRM 2420, the court recognized:

> "(1) the collective bargaining agreement in issue was voluntarily entered into by both parties to this suit, and presumably both benefited therefrom, and (2) the provision \* \* \* for binding arbitration provides that while the decision of the arbitrator is final and binding on both parties, the arbitrator's jurisdiction is "limited" to the interpretation of the meaning of the provisions of this agreement \* \* \*."

The court concluded that because there was a statute providing for collective bargaining, the right to arbitrate minor disputes was to be implied from the statute, stating: "Certainly giving the power to enter into a contract would include the power to settle disputes arising under the terms of such contract \* \* \*."

Finally, in *Gary Teachers Union No. 4 v. School City,* 284 N.E.2d 108, 114 (Ind.App. 1972), where, in the absence of any public employment statute, the court sanctioned collective bargaining between a public employer and a teachers' union and approved binding arbitration, in holding that the School Act there gives the public school authority a broad grant of power, the court stated:

> "We believe that the Indiana General School Powers Act passed in 1965 and the Uniform Arbitration Act passed in 1969 together are broad enough to *permit* the governing bodies of school corporations in the State of Indiana to exercise, as one of many

options, the type of agreement here involved. We hold that such broad policy option is implicit in both of the above cited statutes."

In principle, we agree with the above cases and recognize the salutory effect that binding arbitration has in the resolution of minor matters.[13] However, in those cases, with the exception of the *Gary Teachers* case, the legislatures of the respective states have expressly provided for public employment labor legislation and, as a consequence, arbitration has a basis in the enabling statutes. In the absence of such a statute here, we cannot say that *all* disputes arising from the collective bargaining agreement are proper subjects for binding arbitration. In fact, a line of cases has held that certain matters found in the School Code are not to be delegated to an outside party.[14]

However, we are of the opinion that arbitration of certain "minor" disputes pursuant to a collective bargaining agreement does not constitute a delegation by the board, and we believe they should be submitted to binding arbitration in the event of impasse. Tacit approval has apparently been given to this concept by the court in *Board of Education v. Champaign Education Association*, 15 Ill.App.3d 335, 304 N.E.2d 138 (4th Dist.), wherein the defendants, pursuant to their collective bargaining agreement, filed a "grievance" claiming "specific violations of School Code 24.9 by Unit 4 (plaintiff) and deprivation of equal protection under the law of individual teachers and groups of teachers as guaranteed by Section IIIA(1) of the contract." This grievance was ultimately submitted to binding arbitration, where the plaintiff filed a motion to dismiss the claim (1) for want of jurisdiction; and (2) on the basis that the grievance was based solely on an alleged violation of the School Code and not on a violation of the agreement in which arbitration is provided. The arbitrator found for defendants, and plaintiff thereafter moved to vacate the award and the trial court set it aside, basing its decision on the fact that the arbitrator had exceeded his power because the agreement did not provide for the grievance raised by defendants. This court affirmed the decision and concluded that the specific grievance was one not encompassed by the terms of the agreement. It recognized, however, that arbitration was an acceptable method of resolving disputes arising out of an agreement, when it stated on page 341:

---

[13] *See* Ill. Rev. Stat. 1971, ch. 111⅔, par. 328a; calling for collective bargaining agreements and for the arbitration of disputes between labor unions and the Chicago Transit Authority. *See* Ill. Rev. Stat. 1971, ch. 24, par. 10—3—8; providing for arbitration between firemen and municipalities.

[14] *Cf. McCormick v. Burt*, 95 Ill. 263; *Lindblad v. Board of Education of Normal School District*, 221 Ill. 261, 77 N.E. 450; *Pearson v. Board of Education*, 12 Ill.App. 2d 44, 138 N.E.2d 326.

"Had their [defendants] contention been that they were receiving a lunch period of *less* than 30 minutes the issue clearly would have been arbitrable, since it would have constituted a claim that the contract provision was being violated and thus a "grievance" within the provisions of Section II A."

The problem inherent in our deciding that certain "minor" disputes are arbitrable is that standards are necessary to determine which disputes are minor. In the absence of any legislative expression, such standards are lacking in this State.

■■ In this regard, we note that certain matters are specifically reserved to the board by the Illinois School Code and cannot, until such time as the legislature acts, be the subject of binding arbitration. Thus, we believe that only those terms in collective bargaining agreements which are not in contravention of the Code are arbitrable. For example, the School Code provides that the board has the duty "To appoint all teachers * * *" (Ill. Rev. Stat. 1971, ch. 122, pars. 10—20, 10—20.7) and the cases have held that this power cannot be delegated or limited by contract. (*Elder v. Board of Education,* 60 Ill.App.2d 56, 208 N.E.2d 423; *Stroh v. Casner,* 201 Ill.App. 281; *Lindblad v. Board of Education,* 221 Ill. 261, 77 N.E. 450.) Beyond this negative definition, it becomes impossible in the abstract to contemplate which contract disputes will be minor in nature and therefore arbitrable. Accordingly, we hold that the decision of whether a dispute is arbitrable (*i.e.,* minor in nature) should be left to the respective parties and the arbitrator(s). By so providing, we would allow a third party to make the initial decision of arbitrability in disputes arising out of and in the contemplation of the collective bargaining agreement.

Further, we see no reason why the dictates of the Illinois Arbitration Act (Ill. Rev. Stat. 1971, ch. 10, par. 101 *et seq.*) should not apply and govern the resolution of minor disputes. In this way, although the initial determination is left to the arbitrator, the court retains the power to vacate an arbitrator's award under section 12(e) of the Act if the issue is one that is not arbitrable or if the arbitrator has exceeded his power. *See Champaign Education Association, supra,* where it was stated:

"'Where there is an agreement to arbitrate and its scope is reasonable in doubt, the issue of arbitrability should be initially determined by the arbitrators, subject to the protective reservations of Section 12 of the Act—under which the court may vacate an award under the varying conditions therein specified.'"

We would hope by this method of resolving minor disputes the following benefits, as discussed in 54 Cornell L.R. 129, 135-136, might follow:

"Binding arbitration of grievances, however, has much to commend it. First, the collective bargaining agreement is more meaningful because the confidence of the workers in the equity of the agreement is strengthened when they know that any dispute over the meaning of the contract may be submitted to an impartial third party for decision. Second, it encourages more careful decision making by the government employer. If he knows that his actions may be subjected to the scrutiny of an arbitrator whose decision will be binding, he will be less likely to make hasty decisions and more likely to calculate the effect of his order. Third, it would create pressure to settle grievances at lower levels. The natural reluctance of management officials to have their decisions reviewed by outside parties reduces the tendency of upper-level management to uphold unjust decisions made by lower-level management. Fourth, if the parties must bear the cost of arbitration by outside parties, they are likely to attempt to resolve their differences before such expense is incurred."

## II.

*The Johnson grievance.* Johnson contends that her involuntary transfer from one school to another was in disregard of her contractual seniority rights as provided for in the agreement and therefore her grievance should have been submitted to arbitration.

■■■ The collective bargaining agreement provides that on the question of involuntary transfers or reassignments, plaintiff shall determine, among other things, the transferee's qualifications for the position. The agreement further provides that the administration "shall use" certain guidelines in interpreting a teacher's qualifications (set forth in footnote 4 of this opinion). Johnson argues that the administration here either failed to consider her seniority or did not accord satisfactory weight to it in interpreting her qualifications. She contends that an arbitrator should be allowed to determine whether compliance was had with the guidelines set forth in the agreement. In this regard, it is noted that although the agreement requires the administration "shall use" the guidelines, it does not inform us as to the manner in which they should be used nor does it indicate the weight to be accorded each guideline.

Thus, it appears that the administration, in interpreting a teacher's qualifications, makes a determination of the weight to be given each. Under these circumstances, to allow an arbitrator to review the decision of the administration would permit the substitution of the arbitrator's judgment as to the relative importance of each guideline in the ultimate decision. This, in effect, would result in the arbitrator determining the

teacher's qualifications and, as has been clearly stated and agreed to by the parties here, both in their briefs and in the agreement, that decision is to be made by the school administration. As stated in *Rockford*, on page 1094:

> "The ultimate determination of 'qualification' was not, nor could it be, delegated by the Board to any outside agency including the American Arbitration Association."

In fact, the collective bargaining agreement here recognizes that plaintiff has certain inherent duties and responsibilities that are reserved to it.[15] Accordingly, we conclude that the right to determine qualifications is one that cannot be delegated and is not, therefore, a proper subject for arbitration.

We realize that in the earlier portion of this opinion we decided that the initial question of arbitrability should be decided by an arbitrator. We also held that only those items not in contravention of the Code would be subject to arbitration but, because we have held that the determination of qualifications rests with the school administration and is not arbitrable, and since the Johnson grievance involves the question of her qualification, it would serve no useful purpose here to remand this case for a determination of its arbitrability.

### III.

*The Creighton-Hackel grievance.* The Creighton-Hackel grievance involves an alleged violation of the collective bargaining agreement which sought to disengage teachers from performing functions allegedly "clerical in nature." Specifically, the above grievants complained that they were required to write in the names of their students on monthly attendance cards; a job theretofore done by the school clerk. The dispute was submitted to arbitration with an award in favor of the grievants.[16]

---

[15]"The terms of this agreement shall not apply where inconsistent with constitutional, statutory or other legal provisions.

* * *

The Union recognizes that the Board of Education has full authority and responsibility under the laws of the State of Illinois for making decisions as to employment, tenure or discharge of any of its employees. The Union recognizes that in the operation of the schools the Board is guided by the policies, regulations and criteria for the approval, recognition and accrediting of schools as promulgated by the Superintendent of Public Instruction of the State of Illinois * * * and the laws of the State of Illinois. The Union recognizes the Board's right to direct the operation of the schools."

[16] The arbitrator finding, in pertinent part:

"* * * the arbitrator concludes that Section 24—18 does *not* require teachers to write pupils' names on the attendance sheets. The issue of who should do so is not, therefore, inarbitrable. It is arbitrable."

What concerns us here, consistent with the above portions of this opinion, is whether the grievance involved is arbitrable as a "minor" dispute contemplated by the express terms of the contract, or whether arbitration is precluded because the specific grievance is governed by a provision of the School Code (by our definition, therefore, not a "minor" dispute).

■■ Our first analysis must therefore concern itself with the provisions of the School Code cited as applicable by the grievants; sections 18—12 and 24—18 (Ill. Rev. Stat. 1971, ch. 122, pars. 18—12, 24—18). Section 24—18 provides that teachers "shall keep daily registers * * *. Such registers shall be furnished by the school directors * * *." This section mandates that teachers are required to keep daily records on forms given to them by their respective administrations. It is our opinion that this statutory section says no more than that, and the question of whether or not the students' names were to be filled in by the school clerk or by the individual teacher was seemingly not within the contemplation of the drafters of this section. We believe, therefore, that as to this grievance, there is no specific statutory language invalidating its inclusion in the agreement nor governing its resolution. Moreover, we do not construe the statute to provide for the filling in of students' names on a monthly basis; rather, we believe the statute refers only to the mechanical function of filling in, on a daily basis, the attendance spaces provided on the form. There being no governing statutory authority and the submission to arbitration not being a delegation of the plaintiff's duties as provided for by statute, the dispute was one, certainly minor in nature, that could have been submitted to arbitration pursuant to a collective bargaining agreement. Since the grievance was one specifically provided for within the agreement, the arbitrator did not exceed his authority in determining the grievance to be arbitrable, nor did he, in our opinion, render an incorrect award.

We conclude that as to the Creighton-Hackel grievance, the grievance was one that was arbitrable pursuant to the provisions of the collective bargaining agreement and that it was a violation by plaintiff of that agreement.

Accordingly, the judgment of the trial court as to the Johnson grievance is affirmed and the judgment as to the Creighton-Hackel grievance is reversed.

Affirmed in part.

Reversed in part.

DRUCKER and LORENZ, JJ., concur..