BOARD OF TRUSTEES OF JUNIOR COLLEGE DISTRICT NO. 508, COOK COUNTY, Plaintiff-Appellee, *v.* COOK COUNTY COLLEGE TEACHERS UNION, LOCAL 1600, Defendant-Appellant.

First District (1st Division)   No. 79-1812

Opinion filed July 28, 1980.—Rehearing denied August 26, 1980.

Cornfield & Feldman, of Chicago (Gilbert Feldman, of counsel), for appellant.

Arvey, Hodes, Costello & Burman, of Chicago (George L. Siegel, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

The Board of Trustees of Junior College District No. 508, Cook County, Illinois (Board), brought suit against Cook County College Teachers Union, Local 1600 (Union). The Board sought to enjoin the Union permanently from proceeding with arbitration of a grievance filed by one of its members. The Union filed a complaint against the Board seeking a permanent mandatory injunction requiring the Board to arbitrate this grievance and a grievance filed by another member. The cases were consolidated for hearing. Both the Union and the Board filed motions for summary judgment supported by affidavits. The trial court allowed the motion of the Board for summary judgment and denied the motion of the Union. The order found both grievances involve the judgment and discretion of the Board and therefore were not arbitrable. The Union has appealed.

We will consider the grievances separately. We find no disputed issue of material fact pertaining to either one.

I.
*Grievance of John Fiduccia*

Fiduccia filed a grievance based on denial of his advancement to a higher "lane" or teaching category by the city college administration. The Union amplified his grievance by alleging he "has met all the criteria for lane advancement as stated" in the collective bargaining agreement. The grievance requested Fiduccia be certified as qualified for advancement from lane No. III to lane No. IV.

On December 1, 1976, the Board denied the Fiduccia grievance on the ground it was not timely filed. In addition, the ruling stated the requested advance by the grievant from lane III to lane IV was denied on the merits. Thereafter, the Union filed a demand for arbitration and this litigation followed.

The parties agree article VI, F. 3 of the collective bargaining agreement of the parties, effective from July 1, 1975, to June 30, 1977, sets out the criteria for advancement of a faculty member from lane I to a

higher lane. These requirements need not be fully set out here. It suffices to state the requirements for advancement are various higher degrees plus specified amounts of semester hours of graduate credits. In addition, there are eight paragraphs defining "graduate credit" and stating the requirements for graduate credits of various types. In former contracts, such as that effective from January 1, 1971, through June 30, 1973, the descriptive word "lane" was not used and the four categories into which college teachers were divided were "instructor," "assistant professor," "associate professor," and "professor." The category headed "instructor" contains 13 various steps increasing annual salary from $9250 to $13,550. The remaining three categories contain 15 such increasing steps.

The Board contends the current subdivision into lanes is equivalent to the preceding descriptive subdivision of teaching categories. Only faculty promotions are involved here and this is a nondelegable power of the Board which is not subject to arbitration. The Union contends the net result of lane and step advancement is merely to attain a higher salary. The matter of salary has no effect upon "academic rank, responsibility or anything other than salary." Therefore, the matter is subject to arbitration.

The pertinent collective bargaining agreement between these parties provides (article X. B. 3. j. 2)):

"The arbitrator shall limit his decision strictly to the application and interpretation of the provisions of this Agreement and he shall be without power or authority to make any decision:
* * *

2) Limiting or interfering in any way with the powers, duties, and responsibilities of the Board under applicable law."

Thus, if the Fiduccia grievance pertains to the exercise by the Board of its legal responsibilities "under applicable law" the grievance could not be the subject of arbitration in accordance with the contract. This particular issue has been decided with finality. No citation of authority is required beyond the following:

(1) In *Illinois Education Association Local Community High School District 218 v. Board of Education* (1975), 62 Ill. 2d 127, 340 N.E.2d 7, involving termination of a teacher's employment, the supreme court held this activity was within the discretionary powers of the Board and therefore could not be delegated.

(2) Shortly thereafter, in *Board of Trustees v. Cook County College Teachers Union, Local 1600* (1976), 62 Ill. 2d 470, 343 N.E.2d 473, the supreme court considered a number of related issues. The court commented upon *Illinois Education Association Local Community High School District 218* as follows (62 Ill. 2d 470, 476):

"In our judgment, the holding in *Illinois Education Association* controls the result in this case. We adhere to our position there

stated that the Board's duties in appointing teachers are nondelegable, and it follows therefrom that the arbitrator is without authority to award an employment contract as a remedy for the violation of a collective bargaining agreement."

The supreme court commented further upon grievances by various teachers concerned with denial of promotions in rank. The court held the matter of promotions of teachers in rank "is a nondelegable power of the Board which it cannot be compelled to submit to arbitration." (*Board of Trustees*, 62 Ill. 2d 470, 478.) The court added the following comments (62 Ill. 2d 470, 478-79):

"We find nothing in the applicable collective bargaining agreements to indicate, as the union suggests, that promotions are subject to binding arbitration. An agreement so providing would, in fact, constitute an impermissible delegation of the Board's authority to grant or deny promotions."

(3) In *Board of Trustees v. Cook County College Teachers Union, Local 1600* (1979), 74 Ill. 2d 412, 386 N.E.2d 47, involving the same parties as the instant case, the supreme court dealt with an arbitration award pertaining to assignment of extra work to certain faculty members who had participated in an illegal strike. The supreme court cited *Board of Trustees*, 62 Ill. 2d 470, and *Illinois Education Association*, 62 Ill. 2d 127, for this proposition (74 Ill. 2d 412, 420):

"Even if a dispute between the parties involves the application and interpretation of provisions of the collective bargaining agreement, it is not arbitrable if it would constitute an impermissible delegation of discretionary public responsibility specifically reposed by law in plaintiff. (*Board of Trustees v. Cook County College Teachers Union, Local 1600* (1976), 62 Ill. 2d 470 (matter of faculty promotion); *Illinois Education Association v. Board of Education* (1975), 62 Ill. 2d 127 (matters of faculty appointment and dismissal).)"

The court then set out article X. B. 3. j. 2 of the collective bargaining agreement above quoted.

■■ The Fiduccia grievance necessarily involves a nondelegable duty and responsibility of the Board in the exercise of statutory authority which the Board had neither legal power nor right to delegate. The conclusion of the trial judge that the Fiduccia grievance involves the exercise of nondelegable discretion by the Board and is therefore not arbitrable is affirmed.

## II.
### *Grievance of Ellen Kollegar*
Ellen Kollegar was a faculty member at Wright College. She

transferred to Malcolm X College, as of spring semester of 1978. At Wright College, assignment of class work to teachers proceeded according to seniority. In any department, the most senior faculty member first selected a full program of courses she or he was qualified to teach. Each remaining member of the department did the same in order of descending seniority. At Malcolm X College, each department member, in descending order of seniority, selected a single course which each was qualified to teach. Then, in the same order of seniority, each faculty member would select a second such course and a third until all programs were filled.

The collective bargaining agreement contains in article VIII a number of provisions regarding scheduling of courses and assignments of faculty members to academic programs. Without quoting these provisions at length, it appears therefrom the following factors are material in scheduling an assignment of faculty members to courses:

(1) Availability of work;

(2) Qualifications of the individual faculty members based on various technical criteria; and

(3) Seniority within a department.

The agreement also provides qualifications of faculty members in specific courses or in various fields are to be determined by the following factors:

(1) The teaching field of the particular faculty member;

(2) The years of teaching experience in college courses in that field; and

(3) Graduate degrees held by the faculty member or graduate work done. In addition, relevant outside work experience may be considered in certain situations.

■■ Kollegar filed a grievance with the "Grievance Chairperson" and the president of Malcolm X College. They rejected the grievance. The Union filed a grievance with the Board. A conference was held and the grievance was denied. The Union then demanded arbitration. The Kollegar grievances do not appear in the record. It would seem, however, that the grievances necessarily would be concerned with the assignment of teaching programs, the fairness of the work allotted, and the seniority qualifications of various faculty members.

We find nothing in the collective bargaining agreement which specifically requires the assignment procedure now used at either Wright or Malcolm X Colleges. However, it cannot be denied that qualifications and seniority of individual faculty members must necessarily be determined in any grievance resulting from either of these assignment systems. In our opinion, determination of these factors must definitely be made by the Board and not by an arbitrator. This type of problem

requires educational expertise and accordingly may not be delegated by the Board to any arbitrator. The authorities above cited apply here with the same finality as in the first grievance above described.

We will also cite in this regard the opinion of this court in *Board of Education v. Johnson* (1974), 21 Ill. App. 3d 482, 315 N.E.2d 634. That opinion was filed April 11, 1974. This court did not have the benefit of the three subsequent opinions of the supreme court above cited which were decided commencing in and after November 1975. The decision of this court pertaining to the Johnson grievance involved the issue of transfer of a teacher to another school and refusal to assign her to an open class. This court held "certain matters are specifically reserved to the board by the Illinois School Code and cannot, until such time as the legislature acts, be the subject of binding arbitration." (*Johnson*, 21 Ill. App. 3d 482, 492.) This court also pointed out the collective bargaining agreement required a determination by the Board of the qualifications of the teacher and specified the guidelines to be used in determining such qualifications. Thus, if an arbitrator were permitted to review the decision of the Board, he would then be determining qualifications of the teacher in question.

This court then quoted from *Board of Education v. Rockford Education Association, Inc.* (1972), 3 Ill. App. 3d 1090, 1094, 280 N.E.2d 286, as follows (*Johnson*, 21 Ill. App. 3d 482, 494):

> "The ultimate determination of 'qualification' was not, nor could it be, delegated by the Board to any outside agency including the American Arbitration Association."

In the case before us, as above shown, the collective bargaining agreement reserves to the Board the duty of determining qualifications and assignments of faculty members. The pertinent statute vests in the Board all powers "not inconsistent with this Act, that may be requisite or proper for the maintenance, operation and development of any college or colleges under the jurisdiction of the board." (Ill. Rev. Stat. 1979, ch. 122, par. 103—30.) Thus, the exclusive right of "operation" of the colleges, which necessarily includes the right to assign teachers and pass upon their qualifications, is vested in the Board. It follows that determination of these matters by an arbitrator is legally prohibited. We conclude the finding of the trial court, that resolution of the Kollegar grievance relates to the assignment of teaching programs to faculty members and involves the judgment and discretion of the college administration and is therefore not arbitrable, is affirmed.

## III.
### *The Arbitration-First Clause*

The pertinent collective bargaining agreement provides (article X. B. 3. k.):

"The Board and the Union agree that neither party will appeal an arbitration award to the courts unless the arbitrator is believed by either party to have acted illegally. The Board and Union also agree not to appeal any arbitration case to the courts until the arbitrator has heard the case and rendered an award, even if either the Board or the Union believes the arbitrator has acted illegally."

The Union contends the question as to whether or not any particular dispute or grievance is arbitrable should be initially determined by the arbitrator. The Union points out section 12 of the Illinois Uniform Arbitration Act (Ill. Rev. Stat. 1979, ch. 110, par. 112) provides a method whereby courts may proceed to vacate an award under various specified categories. In addition to *Board of Education v. Johnson,* the Union also cites and relies upon *School District No. 46 v. Del Bianco* (1966), 68 Ill. App. 2d 145, 215 N.E.2d 25, *appeal denied* (1966), 33 Ill. 2d 628, and *Board of Education v. Champaign Education Association* (1973), 15 Ill. App. 3d 335, 304 N.E.2d 138. The Union, therefore, contends a full arbitration hearing should have been held pertaining to both grievances with the right of court review by way of vacation of the award to follow. We disagree.

■■ *Board of Trustees,* 74 Ill. 2d 412, involved the same parties now before us and a similar arbitration-first provision in the collective bargaining agreement. As above shown, the supreme court reiterated the doctrine that nondelegable statutory duties of the Board could not be the subject of arbitration. That theory is expressly stated in the collective bargaining agreement before us. In this regard, we need not comment upon the legal authorities cited by the Union. As above stated, the definitive rulings of the supreme court govern the situation before us. It seems to us the principle that arbitration must first be had in each and every grievance without the right of initial review by the courts is not only contrary to law but would necessarily result in a waste of time and money.

We also note it has been repeatedly held the issue as to whether any contract requires arbitration by its terms should initially be decided by a court and not by an arbitrator. *Kaiser-Ducett Corp. v. Housewrights, Inc.* (1977), 48 Ill. App. 3d 589, 592, 363 N.E.2d 97, and cases there cited.

In our opinion the trial court acted properly in determining the issues before us. The judgment appealed from is accordingly affirmed.

Judgment affirmed.

O'CONNOR and CAMPBELL, JJ., concur.