VICTOR DARNELL, Plaintiff-Appellee, v. THE BOARD OF TRUSTEES OF BELLEVILLE AREA COLLEGE DISTRICT No. 522, Defendant-Appellant.

Fifth District   No. 5—85—0544

Opinion filed January 7, 1987.

Donald W. Anderson and James P. Osick, both of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, and Thomas W. Alvey, Jr., of Thompson & Mitchell, of Belleville, for appellant.

Charles J. Kolker, of Belleville, for appellee.

JUSTICE JONES delivered the opinion of the court:

The plaintiff, Victor Darnell, brought suit against his employer, the defendant, the board of trustees of Belleville Area College District No. 522, on October 9, 1981, alleging that the defendant had violated the terms of the collective-bargaining agreement, called the memorandum of understanding, for the academic year 1970-71 and for all the academic years succeeding. The bargaining agreements had been entered into by the defendant and the faculty bargaining representative, the Belleville chapter of the American Association of University Professors. The plaintiff, a sociology instructor, alleged that the defendant had breached the agreement for 1970-71 and the successive agreements by failing to credit him with six years of previous occupational experience when the defendant placed him on the salary schedule at the time of his hiring in 1971 and in subsequent years. Upon a bench

trial, the trial court entered judgment in favor of the plaintiff in the amount of $45,958.44, the amount of the difference between the salary he had received and the salary he would have received had he been placed on the salary schedule at the time of hiring so as to have been credited with six years of prior occupational experience. The trial court denied the defendant's post-trial motion, and this appeal followed in which the defendant presents three issues for review: (1) whether the trial court erred in failing to hold that the complaint was barred by the Illinois statute of limitations for written contracts (Ill. Rev. Stat. 1985, ch. 110, par. 13—206); (2) whether the trial court erred in failing to hold that the defendant's decision complained of by the plaintiff was within the scope of the nondelegable powers vested in the defendant by the Public Community College Act (Ill. Rev. Stat. 1985, ch. 122, par. 101—1 et seq.); and (3) whether the trial court erred in holding that the defendant was obligated by contract to credit the plaintiff with six years of prior occupational experience in determining his initial placement on the salary schedule in 1971.

At the bench trial on November 20, 1984, the plaintiff called as a witness William Tudor, professor emeritus of Academic Affairs at Southern Illinois University at Edwardsville, who testified that the plaintiff's prior occupational experience as a social worker with the Illinois Department of Public Aid for one year and as deputy director of the Madison County Economic Opportunity Commission for five years is related to the field of sociology.

The plaintiff called as an adverse witness, pursuant to section 2—1102 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1102), Wayne Clark, an administrator of the defendant since 1966 who had been the dean of Instructional Program and Services from 1970 until 1976. In that role the witness had had a role in hiring, including the hiring of the plaintiff. The witness testified that the plaintiff was placed on step 1 of the salary schedule at the time he was hired and that had the plaintiff received six years of credit for occupational experience, he would have been placed on step 7 of the salary schedule at that time. He described those, like plaintiff, teaching in the "academic division" as "those faculty members who would be teaching courses that would transfer to a senior institution" and those teaching in the "career division" as "those faculty members who are teaching courses which are not designed to transfer to a four year institution but are designed for employment at the end of degree which they are seeking." The witness testified that "[i]t was a policy that those faculty members in the Baccalaureate Oriented Program [academic division], teaching in that area, would be given [credit for] prior

experience only if it was earned in an educational institution." He indicated that the distinction made between the career and academic divisions in this regard is "not mentioned in the contract" and acknowledged that nothing in writing shows the distinction made between the two divisions in awarding credit for prior employment experience on the salary schedule. He testified that the plaintiff had not been given credit on the salary schedule for his previous work experience solely because the plaintiff had not gained the experience at an educational institution, a restriction that applies to all "baccalaureate faculty," including the plaintiff as an instructor of sociology. He stated that only one exception had been made, in the case of Chris Niemann, who had had either four or six years of prior academic work experience and two years of prior nonacademic work experience, was hired by the defendant in 1969 to teach in the academic division, and was placed on step 8 of the salary schedule when hired because of an administrative error. The witness was of the opinion that the plaintiff's prior work experience was directly related to and would benefit the plaintiff in the teaching of sociology.

Testifying in his own behalf, the plaintiff, who had been employed by the defendant from 1971 through the time of trial, stated on cross-examination that no classroom teaching had been involved in his occupational experience prior to defendant's hiring him. The contract between the plaintiff and the defendant, dated May 20, 1971, provided that the plaintiff would begin his duties on or about September 1, 1971, that his salary would be based on step 1 of the faculty salary schedule, and that the contract was subject to the memorandum of understanding between the defendant and the faculty.

The defendant called as a witness Wayne Clark, who had testified earlier. He stated that only the board of trustees had the authority to hire members of the faculty and to place them on the salary schedule. His function, he said, is and has been to make recommendations concerning hiring, the effective date thereof, and the placement of the individual hired on the salary schedule to the president of the college who, in turn, makes recommendations to the board of trustees. He testified that the memorandum of understanding sets forth the salary schedule under which all faculty members are paid. The witness stated that, for purposes of initial placement on the salary schedule, those faculty members who will teach in the "Baccalaureate Oriented Program" received credit only for prior employment experience obtained in an educational institution "[b]ecause we use this as a bench mark or as a way of determining experience rather than having to go through whether or not the individual was a truck driver and steam-

fitter, et cetera. We simply use that as a guideline." He indicated that this guideline has been used as long as he has been associated with hiring for the defendant. He reiterated his earlier testimony that only one faculty member, namely, Chris Niemann, has been hired to teach in the baccalaureate, that is, academic, division and given credit for prior employment experience not obtained at an educational institution. Such credit was the result of an error and would not have been granted otherwise. All others, including the plaintiff, hired to teach in the academic division, as opposed to those hired to teach in the career division and those hired as counselors in the career division, were denied credit for prior occupational experience not obtained at an educational institution. The witness indicated that during the 1970's the distinction between "career" and "academic" counselors was abolished. At the time of the hiring of the plaintiff, the witness had recommended to the president of the college that plaintiff not be credited with any prior employment experience because it had not been obtained at an educational institution. The witness testified that, once an individual is placed on the salary schedule at the time of hiring, subsequent changes in placement with regard to prior employment experience do not occur and the college never reconsiders initial placement; credit is given automatically for each additional year of teaching while in the employ of the defendant, but the initial placement never changes.

Admitted as joint exhibits, the memorandum of understanding for 1970-71 and the three years following each provide in section A of article VI, concerning "Salary Schedule": "All faculty members shall be paid according to their placement upon a single salary schedule approved by the Board of Trustees." Subsection (1) of section A in each of these four collective-bargaining agreements provides in pertinent part: "Placement on the salary schedule shall be determined by degree, hours beyond highest degree, years credited, and/or occupational experience." In the memorandum of understanding for 1974-75, article VI provides as follows, in pertinent part:

"A. All faculty members shall be paid according to their placement upon a single salary schedule approved by the Board of Trustees.

1. Newly employed faculty members will be given credit toward placement on the salary schedule for non-teaching experience that is directly related to their academic discipline. The amount of credit will be determined by agreement between the department chairman and the appropriate dean, subject to recommendation by the President and approved by

the Board of Trustees.

2. Placement on the salary schedule shall be determined by degree, hours beyond highest degree, years credited, and/or occupational experience."

Succeeding memoranda contain the same provisions, under article VII, with minor modifications relating to apparent changes in administrative structure. In the memorandum of understanding for 1984-86, section 7.2, concerning "Placement of Faculty Members on Salary Schedule," provides in pertinent part: "Placement on the salary schedule shall be determined by degree, hours beyond highest degree, and consistent with Section 7.1 and at the discretion of the Board, years credited and/or occupational experience."

In its order in favor of the plaintiff, the trial court found "[t]hat the Defendant by its agents and servants, acted arbitrarily, capriciously and without rational justification, in the exercise of its discretionary authority by its failure to credit the Plaintiff, VICTOR DARNELL, on the faculty schedule for his years of prior occupational experience."

We turn first to the second issue presented by the defendant for review, whether the determination made by the defendant in placing the plaintiff on the salary schedule was within the scope of the non-delegable powers vested in the defendant by the Public Community College Act. Community college districts operate under the authority of the Public Community College Act (*Steinmetz v. Board of Trustees of Community College District No. 529* (1978), 68 Ill. App. 3d 83, 385 N.E.2d 745), sections 3—30 and 3—42 of which (Ill. Rev. Stat. 1985, ch. 133, pars. 103—30, 103—42) together provide that the board of any community college district has the power "[t]o employ such personnel as may be needed, to establish policies governing their employment and dismissal, and to fix the amount of their compensation." Section 3—30 vests in such a board all powers "not inconsistent with this Act, that may be requisite or proper for the maintenance, operation and development of any college or colleges under the jurisdiction of the board." (Ill. Rev. Stat. 1985, ch. 122, par. 103—30; *Board of Trustees v. Cook County College Teachers Union, Local 1600* (1980), 87 Ill. App. 3d 246, 408 N.E.2d 1026.) The defendant in the instant cause of action maintains that the power to make the determination challenged by the plaintiff is a nondelegable, statutorily granted one expressly reserved to the board of any community college district. The plaintiff contends, however, in his brief that he did not seek to have the trial court intrude into any nondelegable areas:

"[The plaintiff] did not seek to have the trial court fix his sal-

ary, determine his qualifications, or enter into any other area within the discretion of the BOARD. Rather, he sought, and now continues to seek, merely to have the BOARD OF TRUSTEES abide by the written criteria which it stated it would follow when establishing the placement of its faculty members on the salary schedule. The Plaintiff seeks to prevent the BOARD from following a 'policy' which would establish a distinction between 'academic' and 'career' faculty members, but which has absolutely no basis for its existence in the Memoranda of Understanding, the regulations of the BOARD, school code, or any other document."

The plaintiff adds that "[e]ssentially, [he] sought to prevent the BOARD from relying upon such an unwritten 'policy' in contrast to the provisions of the Memoranda of Understanding in that such reliance constituted arbitrary, capricious and irrational action on the part of the BOARD in light of the non-distinctive criteria set forth in the Memorandum of Understanding and thus constituted breach of those Agreements."

We think that the determination of whether to allow credit for certain kinds of prior occupational experience falls within the statutory power of the board to fix the amount of compensation to be paid to those whom it employs. Such a determination plainly requires educational expertise (see *Board of Trustees v. Cook County College Teachers Union Local 1600* (1980), 87 Ill. App. 3d 246, 408 N.E.2d 1026) peculiarly within the province of the body, namely, the board, charged with the responsibility of fixing salaries and maintaining and developing the college. We must disagree with the trial court and the plaintiff that the defendant acted arbitrarily, capriciously, and without rational justification in the exercise of its discretionary authority in failing to credit the plaintiff for any of the six years of prior occupational experience he had obtained. Given the differences in the kinds of classes taught by those faculty members in the "career," or vocational, division and those faculty members in the "baccalaureate," or academic, division, of whom plaintiff was one, we see no breach of discretion on the part of the board in allowing credit on the salary schedule for certain kinds of vocational experience in the case of faculty members teaching vocational courses but restricting credit for prior occupational experience to teaching experience in the case of faculty members teaching those students with more academic aspirations. Thus the defendant did not act arbitrarily, capriciously, or irrationally in making such a distinction between the "career" and "academic" divisions of the college and, the evidence shows, adhered

consistently to the distinction it had made in the rightful exercise of its statutorily granted powers.

In view of our disposition with respect to this issue, we need not address the other issues presented for review.

Reversed.

HARRISON and KASSERMAN, JJ., concur.